**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GOLDMAN, SACHS & CO., INC; J.P. MORGAN SECURITIES LLC; and RBS SECURITIES INC., <br><br> Defendants. | Civil Action No. 3:11-30285-MAP |

**MASSMUTUAL'S REPLY IN SUPPORT OF**
**ITS MOTION TO STRIKE CERTAIN PURPORTED DEFENSES**

i

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     DEFENDANTS MISSTATE THE LEGAL STANDARD GOVERNING THIS
MOTION...................................................................................................................2

II.    THE LEGALLY INVALID DEFENSES IDENTIFIED IN THE MOTION
SHOULD BE STRICKEN..........................................................................................3

      A.    Defendants' Arguments Demonstrate the Invalidity of Their "No Duty"
Defense ........................................................................................................3

      B.    Defendants Fail to Justify Their Invalid Reliance Defense ....................................6

      C.    The Defense Based on Proportionate Fault Is Distinct from Statutory
Contribution Rights and Contrary to the Plain Language of Section 410 ..............7

      D.    Defendants Fail to Justify Their General Loss Causation Defenses.......................9

      E.    Failure to Mitigate Is Not a Viable Defense to a Section 410 Claim ...................10

      F.    Defendants Fail to Justify Their Assertion of Equitable Defenses to
MassMutual's Statutory Claim ............................................................................12

      G.    Defendants' Opposition Confirms That the "Should Have Known,"
"Assumed the Risk," and "Constructive Knowledge" Defenses Should Be
Stricken ........................................................................................................15

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Access Cardiosystems, Inc.*,
 438 B.R. 16 (Bankr. D. Mass. 2010) ...................................................................14

*Coach, Inc. v. Kmart Corps.*,
 756 F. Supp. 2d 421 (S.D.N.Y. 2010) ...................................................................3

*DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*,
 No. 01 Civ. 11602, 2004 WL 635743 (S.D.N.Y. Mar. 31, 2004) ...........................2

*Dann v. Lincoln Nat'l Corp.*,
 274 F.R.D. 139 (E.D. Pa. 2011) ...........................................................................12

*Dennison v. LaPointe*,
 No. 06-40100-FDS, 2006 WL 3827516 (D. Mass. Dec. 21, 2006) ........................2

*Frota v. Prudential-Bache Sec., Inc.*,
 No. 85 Civ. 9698, 1987 WL 4925 (S.D.N.Y. 1987) ...............................................14

*Gannett Co., Inc. v. Register Publ'g Co.*,
 428 F. Supp. 818 (D. Conn. 1977) .........................................................................14

*Go2net, Inc. v. Freeyellow.com, Inc.*,
 143 P.3d 590 (Wash. 2006) .....................................................................................13

*Hayes v. McGee*,
 No. 10-40095-FDS, 2011 WL 39341 (D. Mass. Jan. 6, 2011) ...............................2

*Jones v. Miles*,
 656 F.2d 103 (5th Cir. 1981) ..................................................................................13

*MBank Fort Worth, N.A. v. Trans Meridian, Inc.*,
 820 F.2d 716 (5th Cir. 1987) ..................................................................................13

*Marram v. Kobrick Offshore Fund, Ltd.*,
 442 Mass. 43, 809 N.E.2d 1017 (2004) ......................................................... passim

*In re Olympia Brewing Co. Sec. Litig.*,
 No. 77 C 1206, 1985 WL 3928 (N.D. Ill. Nov. 13, 1985)...............................5, 11

*Operating Eng'rs Local 139 Health Benefit Fund v. Lake States Indus. Servs., Inc.*,
 No. 05-C-0020, 2005 WL 1563332 (E.D. Wis. June 30, 2005) ...........................12

*Palmer v. Oakland Farms, Inc.*,
 No. 5:10cv00029, 2010 WL 2605179 (W.D. Va. June 24, 2010) .........................12

*Patsos v. First Albany Corp.*,
 433 Mass. 323, 741 N.E.2d 841 (2001) ...................................................................6

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ...................................................................................................14

*Reis Robotics USA, Inc. v. Concept Indus., Inc.*,
    462 F. Supp. 2d 897 (N.D. Ill. 2006) ........................................................................12

*SEC v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) (Section 12(a)(1) ......................................................14

*United States v. 729.773 Acres of Land, More or Less*,
    531 F. Supp. 967 (D. Haw. 1982) ...............................................................................3

*United States v. Atl. Research Corp.*,
    551 U.S. 128 (2007) ......................................................................................................8

*United States v. Manhattan-Westchester Med. Servs., P.C.*,
    No. 06 Civ. 7905 (WHP), 2008 WL 241079 (S.D.N.Y. Jan. 28, 2008) .....................3

## Statutes/Rules

15 U.S.C. § 78u-4(f) ............................................................................................................8

Mass. Gen. Laws ch. 110A, § 410(a) ........................................................................... passim

Mass. Gen. Laws ch. 110A, § 410(b) ..................................................................................7

Mass. Gen. Laws ch. 110A, § 410(c) ................................................................................10

## Miscellaneous

5C Charles Alan Wright & Arthur R. Miller,
    *Fed. Prac. & Proc.* § 1381 (3d ed. 2012) ...............................................................2

1 Roger J. Magnuson,
    *Shareholder Litigation* § 5:9: Section 12(2) ..........................................................14

Pursuant to the stipulation submitted on April 20, 2012, Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") respectfully submits this reply memorandum in support of its motion to strike certain purported defenses asserted by Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Deutsche Bank Securities Inc. ("Deutsche Bank"), Goldman, Sachs & Co., Inc. ("Goldman Sachs"), J.P. Morgan Securities LLC ("J.P. Morgan Securities"), and RBS Securities Inc. ("RBS Securities") (collectively, "Defendants") in their respective Amended Answers.

## PRELIMINARY STATEMENT

To avoid insertion of a variety of nonissues in this otherwise straightforward case, MassMutual has moved to strike from Defendants' Amended Answers several legally invalid defenses that have no conceivable application to MassMutual's claims under the Massachusetts Uniform Securities Act.  Because Defendants cannot show that any of the challenged defenses are valid, they resort to arguments justifying other defenses they have asserted (which MassMutual has not moved to strike), and all but ignore the challenged defenses that are the subject of this motion.  For example, instead of attempting to justify their challenged "no duty to disclose" defense, Defendants' argument addresses a different defense that the allegedly omitted information did not render any statement misleading.  Instead of addressing their challenged lack of reasonable or justifiable reliance defense, Defendants' argument addresses a different defense that the Certificates were not sold by means of false or misleading statements.  And instead of addressing their challenged constructive knowledge defense, Defendants' argument addresses a different "willful blindness" defense that is not to be found in their Amended Answers.

No amount of pretending that MassMutual's motion is directed to defenses that it does not address can save the legally invalid defenses in the Amended Answers.  When defenses are legally invalid, a motion to strike serves the useful purpose of eliminating such insufficient

1

defenses to preserve the parties' and the Court's resources, to focus the issues, to discourage irrelevant frolics and detours in discovery, and to hasten resolution of the case. MassMutual's motion to strike should be granted in its entirety.

## **ARGUMENT**

## I.   **DEFENDANTS MISSTATE THE LEGAL STANDARD GOVERNING THIS MOTION**

As set forth in MassMutual's moving papers, Federal Rule 12(f) permits motions to strike purported defenses that are legally invalid and have no conceivable application to MassMutual's claim. *See, e.g.*, 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1381 (3d ed. 2012) (any defense that "would not, under the facts alleged, constitute a valid defense to the action" is "particularly vulnerable to a Rule 12(f) motion," and "can and should be deleted"). Notwithstanding Defendants' protests to the contrary, MassMutual's motion does not involve "substantial issues of law," "close or new questions of law," or factual disputes. Opp. at 3. Rather, the motion is directed exclusively to purported defenses included in the Amended Answers that have no conceivable application to this case. With respect to plainly inapplicable defenses, motions to strike are *not* disfavored and, in fact, they "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case." *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, No. 01 Civ. 11602, 2004 WL 635743, at *1 (S.D.N.Y. Mar. 31, 2004) (internal quotations omitted); *see also* Motion at 2-3 (citing additional cases).

In arguing that motions to strike are disfavored, Defendants rely on case law addressing motions to strike allegations in a complaint or defenses the success of which may depend on discovery. *See, e.g.*, *Hayes v. McGee*, No. 10-40095-FDS, 2011 WL 39341, at *1 (D. Mass. Jan. 6, 2011) (motion to strike complaint); *Dennison v. LaPointe*, No. 06-40100-FDS, 2006 WL

2

3827516, at *2 (D. Mass. Dec. 21, 2006) (same); Opp. at 3-4 (citing cases involving defenses dependent on discovery).  These cases have no applicability to this motion, which seeks to strike legally invalid defenses that no amount of discovery can rescue.  Defendants also maintain that even legally meritless defenses should not be stricken unless MassMutual can make a separate showing of prejudice.  This argument misstates the legal standard.  Allowing Defendants to maintain purported defenses that are invalid as a matter of law is, by definition, prejudicial.  *See, e.g.*, *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010) ("[I]nclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation."); *United States v. Manhattan-Westchester Med. Servs., P.C.*, No. 06 Civ. 7905 (WHP), 2008 WL 241079, at *3 (S.D.N.Y. Jan. 28, 2008) ("Where a defense must fail as a matter of law, its inclusion prejudices the plaintiff because it will increase the duration and expense of trial."); *United States v. 729.773 Acres of Land, More or Less*, 531 F. Supp. 967, 971 (D. Haw. 1982) ("Although [a motion to strike] is not normally granted unless prejudice would result to the movant from the denial of the motion, *it is appropriately granted where the defense is clearly legally insufficient . . . .*") (emphasis added).

Defendants' persistent efforts to recast the legal standard notwithstanding, there is no legitimate dispute that defenses with no conceivable legal merit threaten to confuse the issues and should be stricken.

## II.   THE LEGALLY INVALID DEFENSES IDENTIFIED IN THE MOTION SHOULD BE STRICKEN

### A.   Defendants' Arguments Demonstrate the Invalidity of Their "No Duty" Defense

MassMutual has moved to strike the purported defense that Defendants owed no duty to MassMutual, including no duty to disclose information and no duty to verify information in the offering materials, because a "no duty" defense is foreclosed by Section 410.  *See* Motion at 5-6

(identifying defenses at issue).  Defendants do not, and cannot, dispute that "no duty to verify

information" is inapplicable to this statute imposing liability for material misrepresentations.  *See*

Opp. at 5-7 (failing to address defense).  Section 410(a)(2) creates a statutory "duty" that a

defendant exercise reasonable care in reviewing information to avoid liability, and the "no duty

to verify information" defense, which is contrary to the statute and confuses the issues, should be

stricken.  *See* Motion at 6.

       Not taking any of these points head on, Defendants focus exclusively on the statutory

language regarding omissions, arguing that "the statute requires a duty to disclose before liability

for an alleged omission can attach."  *See* Opp. at 5.  Defendants are wrong; there is nothing in the

statute or relevant case law requiring a plaintiff to plead or prove a duty to disclose.  Instead, as

Defendants admit, Section 410 merely requires a plaintiff to plead and prove "'any untrue

statement of a material fact or any omission to state a material fact *necessary in order to make*

*the statements made . . . not misleading*.'"  *Id.* (emphasis in original).  This language does not

give rise to a "no duty" defense, as Defendants maintain, but rather to a defense that the

allegedly omitted information did not render any statement misleading.  Defendants have

asserted this defense in various forms, and MassMutual has not moved to strike it.  *See, e.g.*, JP

Morgan Amended Answer at 24-25 (Fourth, Fifth and Eighth Defenses); Goldman Sachs

Amended Answer at 40-41 (Fourth, Fifth and Sixth Defenses); Merrill Lynch Amended Answer

at 35-37 (Third, Seventh, and Tenth Defenses); Deutsche Bank Amended Answer at 29-30, 33

(Fourth, Eighth, and Twenty-Second Defenses); RBS Securities Amended Answer at 27-28, 31

(Fourth, Eighth, and Twenty-Second Defenses).  Although Defendants are free to argue that

omitted facts were not material or were not necessary to make the statements made not

misleading, as they do in these other defenses, they are not free to advance a separate "no duty" defense that is unsupported by the statute or case law.[1]

Defendants also argue that because Section 410 imposes liability for omissions that render a statement misleading (and not for pure omissions), a duty to disclose is somehow implicated. *See* Opp. at 5-7. But this argument proves MassMutual's point: because the statute does not create liability for pure omissions, only for omissions that render a corresponding statement misleading, there is no "duty to disclose" at issue under the statute. *See* Motion at 5-6; Opp. at 5 (citing cases making clear that a duty to disclose is implicated only when, unlike here, a plaintiff seeks to hold a defendant liable for silence). The statute merely requires MassMutual to show that an omission rendered a statement made in the offering materials misleading. *See* Mass. Gen. Laws ch. 110A, § 410(a)(2). MassMutual need not show in addition that Defendants owed a "duty" of disclosure, and argument about the absence of such a "duty" is not a defense. The statute itself makes irrelevant any "no duty" defense with respect to the omissions it describes, and Defendants cannot insert the defense into this case to confuse the issues or expand discovery.

Finally, Defendants assert that MassMutual would not be prejudiced by allowing them to pursue the "no duty" defense. Opp. at 6. To the contrary, not only is the defense likely to confuse the issue of what is required under the statute (the Opposition itself is evidence of that), but it also threatens to expand discovery. Whether a duty of disclosure existed between Defendants and MassMutual could give rise to a fact-intensive inquiry involving, for example, discovery into all aspects of the relationship between Defendants and MassMutual over a period

---

[1] Under Defendants' own authority, any defense challenging an element of a claim is separately subject to a motion to strike because the defense should be raised in the denial and not as a separate defense. *See In re Olympia Brewing Co. Sec. Litig.*, No. 77 C 1206, 1985 WL 3928, at *2 (N.D. Ill. Nov. 13, 1985); Opp. at 7.

of time prior to MassMutual's purchases of the Certificates.  *See, e.g.*, *Patsos v. First Albany Corp.*, 433 Mass. 323, 332-37, 741 N.E.2d 841, 849-52 (2001) (discussing the factual inquiry a court must undergo to determine if a duty to disclose exists, including examining the relationship between the parties, along with their relative knowledge and expertise).  The "no duty" defense should be stricken, and Defendants should be left with the omissions-related defenses set forth in the statute.

### B.      Defendants Fail to Justify Their Invalid Reliance Defense

MassMutual has moved to strike the portion of Defendants' defenses asserting that MassMutual did not reasonably or justifiably rely on any alleged misrepresentations because the law is clear that reliance is irrelevant to a claim under Section 410.  *See* Motion at 6-7 (identifying defenses at issue).  Defendants do not address MassMutual's argument, and do not address the validity of a reliance defense at all.  Instead, Defendants argue that the portion of the defenses MassMutual has *not* moved to strike (which asserts that the Certificates MassMutual purchased were not sold "by means of" the misrepresentations) is valid.  *See* Opp. at 12-14. Obviously, Defendants cannot maintain a legally invalid defense by combining it with a valid one.  Courts have analyzed the very "by means of" language Defendants cite and have held that it does not impose any reliance element or support a reliance defense.  *See Marram*, 442 Mass. at 51-52, 809 N.E.2d at 1026.

Even though a reasonable and justifiable reliance defense is plainly invalid, Defendants insist that it should remain in the case because it purportedly is non-prejudicial; Defendants maintain that any discovery related to the defense will "substantially overlap with discovery relevant to other defenses that MassMutual does not seek to strike."  Opp. at 13-14.  Defendants are wrong on both counts.  First, a legally invalid defense is, by definition, prejudicial.  *See supra* Section I.  Second, perpetuating an invalid reliance defense threatens to waste time and resources

on unique factual issues regarding what specific statements in the offering materials MassMutual

may have reviewed or relied on[2] and on unique expert issues regarding whether MassMutual's

reliance was reasonable or justifiable.  The invalid reliance defenses should be stricken.

### C.    The Defense Based on Proportionate Fault Is Distinct from Statutory Contribution Rights and Contrary to the Plain Language of Section 410

MassMutual has moved to strike the defenses based on proportionate fault because they

improperly seek to reduce MassMutual's statutorily prescribed recovery based on arguments that

the harm is allegedly attributable to the actions of others.  *See* Motion at 7 (identifying

challenged defenses).  The attempt to reduce MassMutual's recovery based on arguments about

the fault of others is contrary to the provisions of Section 410, which makes every proper

defendant liable for the full extent of rescission or damages.  *See id.*; Mass. Gen. Laws ch. 110A,

§§ 410(a)(2), 410(b).

Defendants largely ignore MassMutual's argument in support of its motion, asserting that

MassMutual is relying on "the absence of any statutory language" setting forth a proportionate

fault defense as the sole reason such a defense is foreclosed.  Opp. at 18-19 (emphasis omitted).

As MassMutual has shown, however, a defense that damages should be reduced based on

proportionate fault is foreclosed by the language of the statute awarding a plaintiff the full

amount of rescission or damages and making every seller and statutory control person jointly and

severally liable for the full amount.  Mass. Gen. Laws ch. 110A, §§ 410(a)(2), 410(b).  For a

proportionate fault defense to be available, the Court would have to modify the terms of the

---

[2] Defendants are wrong that MassMutual's reliance is relevant to materiality.  *See* Opp. at 13-14.  The test for materiality is an objective one, and whether MassMutual read and relied on a particular statement says nothing about whether a reasonable investor would have found the statement to be material.

statute so that it awards less than the full amount of rescission or damages depending on the proportionate fault of the defendant, which it cannot do.

Defendants also argue that their proportionate fault defense is viable because a defendant is entitled to seek contribution under Section 410. Opp. at 19-20. But proportionate fault, which seeks to reduce statutory damages payable to MassMutual, is a separate and distinct defense from contribution, which permits partial recoupment from others after full statutory damages have been paid to MassMutual. *Compare* 15 U.S.C. § 78u-4(f)(2)(B)(i) (proportionate fault defense to federal 1934 Act claims, which reduces a plaintiff's recovery to correspond to the "percentage of responsibility" of the defendant), *with United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (defining contribution as a "tortfeasor's right to collect from others responsible for the same tort *after the tortfeasor has paid more than his or her proportionate share*") (internal quotations omitted; emphasis added). The motion obviously does not seek to foreclose any contribution rights Defendants may have after MassMutual is paid statutory damages. Indeed, Defendants have asserted the right to receive contribution as a separate defense, and MassMutual has not moved to strike this defense. *See* RBS Securities Amended Answer at 32 (Twenty-Seventh Defense); Deutsche Bank Amended Answer at 34 (Twenty-Seventh Defense); Merrill Lynch Amended Answer at 38 (Twenty-First Defense); Goldman Sachs Amended Answer at 44 (Twenty-Third Defense); JP Morgan Amended Answer at 28 (Twenty-Fifth Defense). But any right to contribution does not justify the proportionate fault defense, which would prevent MassMutual from obtaining its full statutory recovery.

Finally, Defendants argue that the proportionate fault defense should not be stricken because MassMutual has made no separate showing of prejudice related to the continued assertion of the defense. Opp. at 20. Again, the invalidity of the defense alone is reason to strike

8

it.  *See supra* Section I.  In addition, the defense would prejudice MassMutual by:  (i) threatening to reduce the statutory recovery to which MassMutual is entitled; (ii) casting a cloud over otherwise plain entitlement to full statutory damages that will impede settlement discussions; and (iii) threatening to expand fact and expert discovery into the relative fault of a number of parties and non-parties that is otherwise not an issue in this case.

### D.    Defendants Fail to Justify Their General Loss Causation Defenses

MassMutual has moved to strike certain defenses as improper attempts to assert loss causation defenses that are plainly not available under Section 410.  *See* Motion at 8 (identifying defenses at issue); *Marram*, 442 Mass. at 50-51, 809 N.E.2d at 1025.  Instead of attempting to justify their loss causation defenses, which they cannot do, Defendants attempt to justify another, different defense asserted by Deutsche Bank, RBS Securities, and other defendants in the related cases—that the poor performance of the underlying loans alleged in the Complaint is not evidence of underwriting failures, but resulted from other factors.  *See* Opp. at 9-12. MassMutual has not moved to strike this defense, which challenges what inferences can be drawn from the poor performance of the underlying loans.  MassMutual has challenged only the loss causation defenses, by which Defendants seek to avoid statutory liability for material misrepresentations by arguing that MassMutual's losses were caused by other factors.  *See* Motion at 8.  The law is clear, under the Supreme Judicial Court's decision in *Marram*, that such a defense does not exist.  *See id.*; *Marram*, 442 Mass. at 50-51, 809 N.E.2d at 1025.

Defendants strain to reinterpret *Marram*, arguing that its holding that Section 410 "'render[s] tainted transactions voidable at the option of the defrauded purchaser,' *regardless of the actual cause of the investor's loss*," *Marram*, 442 Mass. at 51, 809 N.E.2d at 1025 (emphasis added), actually means something other than what it says.  *See* Opp. at 11 (arguing that *Marram* did not foreclose loss causation as a defense—just as an element of the claim).  Any fair reading

of *Marram* does not support Defendants' interpretation.  When the Supreme Judicial Court held

that a purchaser is entitled to rescind, regardless of the cause of its loss, it meant what it said—

that loss causation is irrelevant.

Because Defendants' loss causation defenses are legally invalid and threaten to expand

discovery and trial with forays into a variety of macroeconomic, microeconomic, market, and

other unidentified "intervening or superseding" factors that the Supreme Judicial Court in

*Marram* confirmed are irrelevant, the defenses should be stricken.

### E.      Failure to Mitigate Is Not a Viable Defense to a Section 410 Claim

MassMutual has moved to strike the defenses asserting a failure to mitigate because they

improperly attempt to rewrite the express recovery calculations set forth in Section 410 and to

reduce (without any authority) the recoveries permitted by statute.  *See* Motion at 9.  Defendants

argue that because no Massachusetts Securities Act case addresses failure to mitigate, that

somehow creates the defense.  *See* Opp. at 7, 9.  But the statutory language itself makes clear that

the defense is invalid.  The statute sets forth the express recovery calculations—for rescission

(for securities still held) and damages (for securities previously sold).  Mass. Gen. Laws ch.

110A, § 410(a)(2).  A failure to mitigate defense would improperly reduce these statutory

calculations by seeking to subtract an additional non-statutory component—the amount a

plaintiff would have received had it complied with some undefined duty to mitigate.  Further, the

statute gives a plaintiff the express right to tender at any time before entry of judgment, *id.* §

410(c); imposing a duty to mitigate, or sell, would be contrary to this statutory right.

As their sole authority for imposing a duty to mitigate that conflicts with the statute,

Defendants maintain the defense was allowed in one unpublished case that they represent was

brought under Section 12 of the Securities Act of 1933.  Opp. at 7-8.  Not only do Defendants

misrepresent this case, but the case is irrelevant to MassMutual's claim under Section 410 of the

Massachusetts Securities Act.  In *In re Olympia Brewing Co. Securities Litigation*, the case

Defendants cite, the court addressed a motion to strike affirmative defenses in a case involving a

number of claims, including claims under the Securities Act of 1933, the Securities Exchange

Act of 1934, and common law.  *See* No. 77 C 1206, 1985 WL 3928, at *1, *10 (N.D. Ill. Nov.

13, 1985).  The court did not uphold a failure to mitigate defense because it was relevant to

Section 12, as Defendants assert, but because it was potentially relevant to securities fraud claims

that measure damages based on diminution in value.  *See id.* at *8, *11.  As the court held, a

plaintiff asserting such claims is not entitled to recover for further diminution in value after it

learns of the fraud, making a failure to mitigate defense (and an equitable estoppel defense)

potentially relevant.  *See id.*  The court's analysis is not relevant to Section 410, which does not

measure recovery based on diminution of value and sets forth clear statutory recovery

calculations that cannot be modified by judicial amendment or party agreement.

  Finally, Defendants contend that there is no prejudice to allowing the failure to mitigate

defense because permitting this invalid defense to persist will not unnecessarily expand

discovery beyond the discovery needed for statute of limitations.  Opp. at 8-9.  To the contrary,

allowing a legally invalid defense regarding when MassMutual "should have sold" will expand

discovery and would intrinsically prejudice MassMutual by confusing the issue of what recovery

is allowed under the statute.  In addition, the mitigation defense threatens to complicate the case

by supplanting the simple recovery calculations set forth in the statute with additional

speculative calculations that may require significant expert discovery.  Defendants' failure to

mitigate defenses, which essentially seek to rewrite the damages calculations of Section 410,

should be stricken.

**F.**     **Defendants Fail to Justify Their Assertion of Equitable Defenses to MassMutual's Statutory Claim**

MassMutual has moved to strike various equitable defenses, including laches, equitable estoppel, waiver, *in pari delicto*, unclean hands, inequitable conduct, and "other related equitable doctrines," because these boilerplate equitable defenses are not valid defenses to a Section 410 claim. *See* Motion at 10 (identifying challenged defenses). The Opposition does not dispute— and in fact acknowledges—that these inapplicable defenses, if left standing, may expand discovery and unnecessarily complicate the case. Opp. at 17-18. Yet Defendants argue that the defenses cannot be stricken because they are viable. *See* Opp. at 15-18. Defendants are wrong.

As an initial matter, the bare bones equitable defenses should be stricken because they fail to provide MassMutual with "fair notice of the defense," which Defendants concede is required. *See* Opp. at 18. Merely reciting the names of various equitable doctrines and a catch-all category of "other related equitable doctrines" does not give MassMutual fair notice of the defenses. *See, e.g.*, *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 146 (E.D. Pa. 2011) (striking defenses of "laches, waiver and/or estoppel" because they "failed to provide [plaintiff] with fair notice"); *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 907 (N.D. Ill. 2006) (granting motion to strike because "[m]erely stringing together a long list of legal defenses is insufficient to satisfy Rule 8(a)"); *see also Palmer v. Oakland Farms, Inc.*, No. 5:10cv00029, 2010 WL 2605179, at \*6 (W.D. Va. June 24, 2010) (striking "estoppel and laches" defense because "the word estoppel without more [is] not a sufficient statement of a defense") (internal quotations omitted); *Operating Eng'rs Local 139 Health Benefit Fund v. Lake States Indus. Servs., Inc.*, No. 05-C-0020, 2005 WL 1563332, at \*4 (E.D. Wis. June 30, 2005) (same).[3]  These

---

[3]  Defendants offer no legal support for their conclusory assertion that *Operating Engineers* misstates the pleading standard for affirmative defenses and is contrary to the law of this jurisdiction. *See* Opp. at 18 n.10.

courts have recognized that broad and undefined defenses that could be interpreted in any

number of ways and used to seek all manner of irrelevant discovery should be stricken.

Second, and more importantly, even a more specific version of these defenses would fail

because equitable defenses are not viable defenses to a statutory Section 410 claim.  In its

moving papers, MassMutual cited authority making clear that the only conduct on the part of a

plaintiff that will bar a Section 410 claim is the plaintiff's actual knowledge of a

misrepresentation; equitable defenses are not defenses to claims under state securities statutes,

including Section 410.  *See* Motion at 10-11; *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass.

43, 51, 809 N.E.2d 1017, 1025-28 (2004).  Defendants miscast this authority, claiming its

rejection of equitable defenses is limited to rejection of "agreements made prior to a sale of

securities that purport to waive compliance," and does not apply to equitable defenses based on

subsequent conduct.  *See* Opp. at 17.  Contrary to Defendants' view, the cases and treatises hold

that equitable defenses, including waiver, estoppel, laches, unclean hands, and *in pari delicto*, are

not viable defenses to claims under state securities statutes or Section 12(a)(2) of the 1933

Securities Act, even if based on conduct that occurred after the purchase of securities.  *See Jones

v. Miles*, 656 F.2d 103, 106-07 & n.7 (5th Cir. 1981) (cited in *Marram*) (waiver by estoppel

based on subsequent conduct of a securities purchaser was not a viable defense to Georgia

securities claim); *Go2net, Inc. v. Freeyellow.com, Inc.*, 143 P.3d 590, 593 (Wash. 2006)

("[P]ermitting a seller to assert equitable defenses is contrary to the [Washington Securities

Act's] primary purpose of protecting investors. . . . [A] seller should not be permitted to avoid

statutory liability by shifting the focus to the postsale conduct of the uninformed investor.");

*MBank Fort Worth, N.A. v. Trans Meridian, Inc.*, 820  F.2d 716, 725 (5th Cir. 1987) ("Waiver by

subsequent conduct that does not take the form of a settlement, is against the policy of the

securities laws.").  *See generally* 1 Roger J. Magnuson,  *Shareholder Litigation* § 5:9: Section

12(2) – Defenses (May 2012) ("If plaintiff knew of the falsity, of course, he cannot recover.  No

other defenses based on plaintiff's conduct are permitted.  There is no defense of contributory

negligence or assumption of risk.  Nor is it a defense to suggest that plaintiff has become in pari

delicto by violating the law in resale of the security.  No cases have recognized the equitable

defenses of waiver, estoppel, or laches.") (footnotes omitted).

The cases Defendants cite do not support their assertion of equitable defenses.  *See*  Opp.

at 15-17.  Defendants' banner case—*In re Access Cardiosystems, Inc.*, 438 B.R. 16 (Bankr. D.

Mass. 2010)—did not "appl[y] equitable defenses to MUSA claims," as Defendants represent.

*See* Opp. at 15.  Instead, the court merely noted in *dicta* a variety of factors that could make an

award of rescission under Section 410 difficult in that case, ultimately holding that an award of

damages—not rescission—was proper because the plaintiff no longer owned the securities.

*Access Cardiosystems*, 438 B.R. at 22-23.  Defendants' remaining cases are similarly off point.

*See, e.g.*, *Frota v. Prudential-Bache Sec., Inc.*, No. 85 Civ. 9698, 1987 WL 4925, at *3

(S.D.N.Y. 1987) (Section 10(b) case merely reciting the defendants' argument that waiver and

estoppel could be used as a defense to securities fraud claims); *SEC v. Ross*, 504 F.3d 1130, 1145

n.15 (9th Cir. 2007) (Section 12(a)(1) claim where laches defense was not before the court; court

noted in *dicta* that an intervenor "might have" attempted a laches defense if a claim were filed);

*Pinter v. Dahl*, 486 U.S. 622, 638-639 (1988) (holding that *in pari delicto* may *not* defeat

recovery in a § 12(1) action under the circumstances present in this case, where the plaintiff was

"primarily an investor" (as opposed to a promoter)); *Gannett Co., Inc. v. Register Publ'g Co.*,

428 F. Supp. 818, 827-30 (D. Conn. 1977) (applying the rule under Section 10(b) that "that

rescission must be demanded promptly after discovery of the fraud" to a Connecticut statute, but

14

not addressing well-settled Massachusetts law that a purchaser has the option of rescinding at any time before the entry of judgment).

Defendants' equitable defenses, no matter how framed, are not valid defenses to MassMutual's single claim under Section 410.  Defendants' effort to graft such defenses onto the statute and destroy its "consumer-oriented focus,"  *Marram*, 442 Mass. at 54, 809 N.E.2d at 1027, should not be permitted, and the defenses should be stricken.

### G.   Defendants' Opposition Confirms That the "Should Have Known," Had "Constructive Knowledge," and "Assumed the Risk" Defenses Should Be Stricken

MassMutual has moved to strike Defendants' constructive knowledge ("should have known") and assumption of risk defenses because the law is clear that these are not viable defenses to a Section 410 claim.  *See* Motion at 11-12 (identifying challenged defenses). Defendants do not, and cannot, dispute that these defenses are legally invalid, *see* Opp. at 14-15, and this concession by lack of argument alone justifies striking the defenses.  *See supra* Section I.

Instead, Defendants argue in favor of another defense, a "willful blindness" defense, which is not found in the Amended Answers.  Defendants argue that the challenged defenses cannot be stricken "[i]nsofar as striking [them] would immunize Plaintiff from the defense that it was willfully blind to the alleged misstatements or omissions."  *See id.* at 14.  Defendants' arguments in support of a separate defense that they have not asserted are irrelevant.

First, Defendants do not explain how willful blindness, which Defendants argue is one definition of actual knowledge used in the criminal context, is the same as constructive knowledge and assumption of risk presented in their challenged defenses.  *See id.* at 14-15. Second, Defendants provide no justification for importing the willful blindness doctrine from the criminal context and applying it to a civil case seeking recovery under the Massachusetts

Securities Act.  Defendants' cases, which apply the doctrine to culpable defendants, *see id.*, do not support applying the doctrine to a statute that, by its plain terms, specifies that only actual knowledge is a defense.  *See* Mass. Gen. Laws ch. 110A, § 410(a)(2).  There is particularly no reason to alter the statutory requirements given that the statute "was intended to reverse the age-old concept of caveat emptor and replace it with the concept of . . . seller beware." *Marram*, 442 Mass. at 51, 809 N.E.2d at 1026.

Also, Defendants again argue that these defenses cannot be stricken because MassMutual has not made a separate showing of prejudice (beyond legal invalidity, which is conceded) with respect to the constructive knowledge and assumption of risk defenses.  Opp. at 15.  Again, a separate showing of prejudice is not required to strike legally invalid defenses.  *See supra* Section I.  In any event, allowing these defenses would risk opening discovery into additional irrelevant areas, including the reasonableness of MassMutual's investigation prior to its purchases of the Certificates, its investment history, what MassMutual "should have known" from numerous investments not at issue in this case (likely requiring expert testimony), the "risks" it assumed, and the like.  The defenses should be stricken.

## CONCLUSION

For the reasons set forth above and in its moving papers, MassMutual respectfully requests that the Court grant its motion to strike the following purported defenses in the identified parties' Amended Answers:  Fifth Defense (Merrill Lynch); Sixth Defense (J.P. Morgan Securities); Sixth Defense (Merrill Lynch, to the extent it asserts that MassMutual "should have known" of the misrepresentations; Eighth Defense (J.P. Morgan Securities, to the extent it asserts that MassMutual "should have known" of the misrepresentations); Tenth Defense (Goldman Sachs); Eleventh Defense (RBS Securities and Deutsche Bank); Eleventh

Defense (Goldman Sachs, to the extent it purports to assert a loss causation defense); Twelfth

Defense (Goldman Sachs and Merrill Lynch, to the extent it purports to assert a loss causation

defense); Twelfth Defense (RBS Securities and Deutsche Bank, to the extent it asserts that

MassMutual "should have known" of the misrepresentations); Twelfth Defense (J.P. Morgan

Securities, to the extent it asserts that MassMutual did not "reasonably or justifiably rely" on the

misstatements or omissions); Thirteenth Defense (Merrill Lynch); Fourteenth Defense (J.P.

Morgan Securities, to the extent it asserts that MassMutual had "constructive knowledge" or

"assumed the risks"); Fourteenth Defense (Goldman Sachs, to the extent it purports to assert a

loss causation defense); Fifteenth Defense (Goldman Sachs, RBS Securities and Deutsche Bank);

Sixteenth Defense (Goldman Sachs, to the extent it purports to assert a loss causation defense);

Seventeenth Defense (Goldman Sachs, J.P. Morgan Merrill Lynch); Seventeenth Defense (RBS

Securities and Deutsche Bank, to the extent it purports to assert a loss causation defense);

Eighteenth Defense (Merrill Lynch); Eighteenth Defense (Goldman Sachs, to the extent the latter

asserts that MassMutual did not "reasonably or justifiably rely" on the misstatements and

omissions); Nineteenth Defense (J.P. Morgan Securities, to the extent it purports to assert a loss

causation defense); Nineteenth Defense (RBS Securities and Deutsche Bank, to the extent it

asserts that MassMutual had "constructive knowledge" or "assumed the risk"); Twentieth

Defense (J.P. Morgan Securities and Merrill Lynch); Twentieth Defense (Goldman Sachs, to the

extent it asserts that MassMutual had "constructive knowledge" or "assumed the risk");

Twentieth Defense (RBS Securities and Deutsche Bank, to the extent it asserts that MassMutual

did not "reasonably or justifiably rely" on the misstatements or omissions); Twenty-First

Defense (Goldman Sachs); Twenty-Third Defense (J.P. Morgan Securities); Twenty-Sixth

Defense (RBS Securities and Deutsche Bank); and Twenty-Seventh Defense (Merrill Lynch, to

the extent it asserts that MassMutual did not "reasonably or justifiably rely" on the misstatements

or omissions).


DATED:  June 20, 2012                    EGAN, FLANAGAN AND COHEN, P.C.


                                         By:        /S/ Edward J. McDonough Jr.
                                              Edward J. McDonough Jr. (BBO 331590)
                                              Stephen E. Spelman (BBO 632089)
                                              Egan, Flanagan and Cohen, P.C.
                                              67 Market Street, P.O. Box 9035
                                              Springfield, Massachusetts  01102
                                              Telephone:  (413) 737-0260
                                              Fax:  (413) 737-0121
                                              ejm@efclaw.com;
                                              ses@efclaw.com

                                         MASSACHUSETTS MUTUAL LIFE
                                         INSURANCE COMPANY

                                              Mark Roellig (BBO 669117)
                                              Executive Vice President and General Counsel
                                              Bernadette Harrigan (BBO 635103)
                                              Assistant Vice President & Counsel
                                              Eleanor P. Williams (BBO 667201)
                                              Assistant Vice President & Counsel
                                              Massachusetts Mutual Life Insurance Company
                                              1295 State Street
                                              Springfield, Massachusetts  01111
                                              Telephone:  (413) 788-8411
                                              Fax:  (413) 226-4268
                                              bharrigan@massmutual.com;
                                              ewilliams@massmutual.com


Of counsel:

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Philippe Z. Selendy (admitted *pro hac*)
Jennifer J. Barrett (admitted *pro hac*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Fax (212) 849-7100

A. William Urquhart (admitted *pro hac*)
Harry A. Olivar, Jr. (admitted *pro hac*)
Molly Stephens (admitted *pro hac*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Fax (213) 443-3100

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 20th day of June, 2012.


/s/ Edward J. McDonough Jr.

_____
Edward J. McDonough Jr.