IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No.  3:11-cv-30285-MAP |
| | : |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GOLDMAN, SACHS & CO., INC.; J.P. MORGAN SECURITIES LLC; and RBS SECURITIES INC., | : |
| | : Oral Argument Requested |
| | : |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |
| | : |

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS- MOTION TO
COMPEL DISCOVERY RESPONSES**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

MASSMUTUAL HAS IMPROPERLY ASSERTED ATTORNEY-CLIENT
PRIVILEGE AND WORK PRODUCT PROTECTION TO BLOCK
DISCOVERY OF ITS "FORENSIC REVIEW." ................................................................ 4

    A.    MassMutual Has Waived Any Purported Protections. ........................................... 6

    B.    Production Is Independently Required Because Defendants
        Have a Substantial Need for the Requested Documents ......................................... 9

    C.    If MassMutual Is Not Required to Produce the "Forensic Review," It
        Should Be Prohibited From Relying on It or Otherwise Referring to It ................ 10

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Ambac Assurance Corp.* v. *DLJ Mortgage Capital, Inc.*,
939 N.Y.S.2d 333 (N.Y. App. Div. 2012) ..............................................................9

*Aumand* v. *Dartmouth Hitchcock Medical Center*,
611 F. Supp. 2d 78 (D.N.H. 2009)..............................................................10, 11

*Chevron Corp.* v. *Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ............................................................................7

*Clark* v. *Edison*,
Civil Action No. 09-40040-FDS, 2010 U.S. Dist. LEXIS 92859
(D. Mass. Aug. 16, 2010)............................................................................ 9-10

*Federal Deposit Insurance Corp.* v. *Ogden Corp.*,
202 F.3d 454 (1st Cir. 2000)................................................................................6

*Greater Newburyport Clamshell Alliance* v. *Public Service Co. of New Hampshire*,
838 F.2d 13 (1st Cir. 1988)..................................................................................7

*In re Grand Jury Subpoena*,
662 F.3d 65 (1st Cir. 2011)..................................................................................6

*In re Keeper of the Records*,
348 F.3d 16 (1st Cir. 2003)..................................................................................7

*In re Salomon Analyst Level 3 Litig.*,
373 F. Supp. 2d 248 (S.D.N.Y. 2005)............................................................. 8-9

*In re Sims*,
534 F.3d 117 (2d Cir. 2008)................................................................................7

*Kingsway Financial Services, Inc.* v. *Pricewaterhouse-Coopers LLP*,
No. 03 Civ. 5560 (RMB) (HBP), 2008 U.S. Dist. LEXIS 105222
(S.D.N.Y. Dec. 31, 2008)...................................................................................11

*Massachusetts Mutual Life Insurance Co.* v. *Residential Funding Co.*,
843 F. Supp. 2d 191 (D. Mass. Feb. 14, 2012) .....................................................1

*UNR Industries Inc.* v. *Continental Insurance Co.*,
No. 85 C 3532, 1992 U.S. Dist. LEXIS 2679 (N.D. Ill. Mar. 6, 1992) ...................8

*Page(s)*

**RULES**

Fed. R. Civ. P. 26(b)(3)..........................................................................................................10

R. D. Mass. 37.1(b)(2) ...........................................................................................................4

## PRELIMINARY STATEMENT

Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") refuses to produce any documents regarding a "forensic review" that it repeatedly relied upon in thirty separate paragraphs of its Complaint, now asserting that this review is privileged and/or protected under the attorney work product doctrine.  MassMutual alleges in its Complaint that this "forensic review," which is based upon a computerized automated valuation model or "AVM," demonstrates that home price appraisals were improperly inflated at the time of the origination of the mortgage loans underlying MassMutual's residential mortgage-backed securities ("RMBS").  The burden is, of course, on MassMutual to establish any privilege or work product protection.  Even if the "forensic review" and AVM were privileged before they were made the subject of MassMutual's Complaint, any privilege or work product protection was waived when MassMutual relied upon the results of its "forensic review" as a primary component of its pleadings.  In any event, MassMutual should not be permitted to use the "forensic review" as a sword in this litigation and then use the shield of privilege and work product to block essential discovery into allegations that it chose to place at the heart of its Complaint.  After exhausting the meet and confer process on this issue, Defendants now respectfully request that the Court compel MassMutual to produce documents regarding its "forensic review" and AVM.[1]

---

[1]     Defendants have also attempted to meet and confer with MassMutual regarding Defendants' other discovery requests and reserve all rights to move to compel compliance with those requests.  Defendants' Requests encompass issues including MassMutual's purported lack of knowledge of the alleged untruths or omissions, which this Court has recognized is an element of MassMutual's claim, as well as the statute of limitations and materiality, which this Court has noted are matters for factual development.  *See Mass. Mut. Life Ins. Co.* v. *Residential Funding Co.*, 843 F. Supp. 2d 191, 200, 208-09 & n.12  (D. Mass. Feb. 14, 2012).  Although Defendants have made

*(Footnote continued)*

## BACKGROUND

MassMutual filed its Complaint on December 29, 2011, claiming that Defendants violated Section 410(a) of the Massachusetts Uniform Securities Act ("MUSA") by making misrepresentations in connection with MassMutual's purchase of certain RMBS (the "Certificates").  MassMutual alleged that the offering documents for the securities included a number of misstatements with respect to the mortgage loans collateralizing their Certificates, including, *inter alia*, that home appraisals were inflated and loan-to-value ("LTV") ratios were thereby understated.  (Compl. ¶¶ 62-140.)  MassMutual's appraisal value and LTV allegations were predicated almost entirely on the supposedly "true" results of MassMutual's own "forensic review," which allegedly employed an AVM that generated lower valuations of residential properties than the non-party appraisers estimated at the time that the loans were issued.[2]  (*See* Compl. ¶¶ 72-73.)  Indeed, the Complaint extensively purported to quote from the results of the AVM, but did not provide any description of its methodology or inputs.

On February 14, 2012, this Court denied Defendants' motion to dismiss, observing with respect to the AVM allegations that "arguments regarding the methodological

_____

*(Footnote continued)*

certain compromises in these ongoing discussions, they have been rendered less productive by MassMutual's unwillingness to address the mutual burdens and extent of discovery among the parties.  MassMutual has stated that its objections are based, at least in part, on the burden of searching across its various business areas for relevant documents.  All parties, however, are large businesses with many employees, and thus Defendants have repeatedly proposed meet and confer discussions regarding the scope of each side's e-mail or other discovery searches in order to reach mutually reasonable accommodations.  Defendants wish to avoid burdening the Court with further motion practice and respectfully submit that directing the parties to engage in bilateral discovery discussions, as is typical in litigations between large business entities, would most effectively further that goal.

[2]   An AVM is a computer program that attempts to estimate the value of a home by examining records of similar property transactions in similar geographical locations.

flaws of the AVM . . . are premature at the motion to dismiss stage." *Mass. Mut. Life Ins. Co.*, 843 F. Supp. 2d at 204.  Two months later, Defendants filed Amended Answers.

Following the Court's order setting January 31, 2013 as the date for substantial completion of document discovery, both parties served discovery requests.  In response to Defendants' First Set of Requests for the Production of Documents ("Defendants' Requests") dated August 6, 2012 (Declaration of Kamil E. Redmond ("Redmond Decl.") Ex. A), MassMutual served Responses and Objections to Defendants' Requests on September 6, 2012 (Redmond Decl. Ex. B).  In those objections, MassMutual refused to produce certain documents and limited to a considerable extent the scope of many of the requests.[3]  In particular, MassMutual considerably restricted requests, among others, seeking documents that would evidence MassMutual's knowledge of, and participation in, the RMBS and U.S. housing markets,[4] and refused to produce documents concerning its so-called "forensic review" and the AVM on which it relied.

Notwithstanding that MassMutual moved to compel Defendants to comply with its discovery requests without *once* speaking with Defendants, a point addressed more fully in Defendants' Opposition to MassMutual's Motion to Compel,[5] Defendants met and conferred with MassMutual about Defendants' Requests in an attempt to narrow the disputed issues and avoid unnecessarily burdening the Court.  On October 5, 2012, Defendants conducted a telephonic discovery conference with MassMutual regarding its objections to Defendants'

---

[3]     *See* Redmond Decl. Ex. B (Pl.'s Resps. to Req. Nos. 3, 5, 12-13, 16-27, 34-39, 42-47, 49, 51-55, 58-61, 65-69, 73-77, 84-85, 91).

[4]     *See* Redmond Decl. Ex. B (Pl.'s Resps. to Req. Nos. 5, 13, 23-25, 27, 35-37, 38, 42, 51, 53, 54, 65-67, 69, 73-86, 90).

[5]     *See* Defs. Opp'n to Mot. to Compel at 5-8.

Requests for approximately one hour and forty-five minutes (the "October 5 meet and confer").[6]

During the October 5 meet and confer, the parties agreed to compromise on the scope of certain

of Defendants' Requests and to discuss other requests further.

        The parties did not reach agreement on MassMutual's position that its "forensic

review," as relied upon and discussed in the Complaint, is protected by the attorney-client

privilege or the work product doctrine.  In Defendants' view, even if the "forensic review" and

AVM-related documents could at one time have been considered privileged or work product,

those protections were incontrovertibly waived when MassMutual put the documents squarely at

issue in its Complaint.[7]  Moreover, regardless of work product protections, Defendants'

substantial need for these documents warrants their production.

## ARGUMENT

### MASSMUTUAL HAS IMPROPERLY ASSERTED ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION TO BLOCK DISCOVERY OF ITS "FORENSIC REVIEW."

        Defendants move to compel production of documents relating to MassMutual's

alleged "forensic review" and the AVM upon which it was purportedly based.  MassMutual

placed its "forensic review" squarely at issue in its Complaint, expressly relying upon it in thirty

---

[6]     The October 5 meet and confer began at 12:30 p.m. EST.  Counsel for MassMutual, Molly Stephens, Esq., Jennifer Barrett, Esq., and Elizabeth Devaney, Esq., were present. Counsel for Goldman, Sachs & Co. ("Goldman Sachs"), David M.J. Rein, Esq., spoke principally on behalf of Defendants.  Counsel for all other Defendants (Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities Inc., J.P. Morgan Securities LLC, and RBS Securities Inc.) also participated.  Aside from those previously mentioned, participants included Alan Turner, Esq., Patrick Connorton, Esq., Andrea Robinson, Esq., Christopher Zimmerman, Esq., Adam Hornstine, Esq., Robert Baron, Esq., Christopher Belelieu, Esq., Kamil Redmond, Esq., and John Quinn, Esq.  *See* R. D. Mass. 37.1(b)(2).

[7]     The disputed requests that seek documents relating to the "forensic review" and AVM are principally Request Nos. 52-54 and 72. (*See* Redmond Decl. Ex. A.)

separate paragraphs.[8]  Moreover, MassMutual's Complaint seeks to rely on its AVM's alleged

precision and reliability, claiming that it is "industry-standard" (Compl. ¶ 64), and generated

"[t]he *true* LTV ratios"[9] and "the *true* values of the appraised properties."[10]  Nonetheless,

MassMutual refuses to produce documents relating to or constituting its "forensic review," or the

AVM upon which it relies, asserting that such documents are protected by both the attorney-

client privilege and the work product doctrine.  MassMutual's contentions are baseless—any

claimed privilege or immunity was plainly waived when MassMutual decided to rely upon the

"forensic review" in its Complaint.  Absent production of the requested documents, Defendants

would be severely prejudiced in their ability to challenge core allegations in MassMutual's

Complaint.

      In light of MassMutual's reliance on its alleged "forensic review," Defendants

sought discovery including:

- "documents relating to [MassMutual's] application or contemplated application of any automated valuation model, including the automated valuation model used in the forensic review referred to in the Complaint" (Req. No. 52).

- documents that MassMutual "read, reviewed . . . or relied upon relating to models and computer algorithms, including automated valuation models, for evaluating mortgage loans generally and RMBS" (Req. No. 53).

- "documents relating to the accuracy, reliability or use of automated valuation models to value residential properties" (Req. No. 54).

- "documents relating to any communications between" MassMutual and any "automated valuation model vendors" (Req. No. 72).

---

[8]    Compl. ¶¶ 62-64, 67, 72, 78, 84, 90, 96, 102, 108, 114, 120, 126, 132, 138, 141, 143, 145-156.

[9]    Compl. ¶¶ 72, 78, 84, 90, 96, 102, 108, 114, 120, 126, 132, 138 (emphasis added).

[10]    Compl. ¶¶ 73, 79, 85, 91, 97, 103, 109, 115, 121, 127, 133, 139 (emphasis added).

MassMutual's written responses to the Requests stated that it would "produce non-privileged documents," but did not disclose that MassMutual intended to withhold *all* documents concerning its "forensic review" and AVM on purported privilege and work product grounds.  (*See* Redmond Decl. Ex. B (Pl.'s Resps. to Req. Nos. 52-54, 72).)  During the October 5 meet and confer, Defendants requested that MassMutual confirm that it intended to produce documents concerning its "forensic review" and AVM.  MassMutual stated that it would not produce documents relating to or constituting its "forensic review" or AVM based on its assertion that such documents are either privileged or constitute work product.

### A.    MassMutual Has Waived Any Purported Protections.

As a threshold matter, MassMutual's attorney-client privilege claims are unfounded not least because non-party providers of AVMs neither offer legal advice nor could be characterized as professional legal advisors.  *See In re Grand Jury Subpoena*, 662 F.3d 65, 71 (1st Cir. 2011) ("[T]he attorney-client privilege attaches only: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such . . . .").  And MassMutual has not articulated to Defendants how its privilege claims apply to its "forensic review" and AVM.  *See FDIC* v. *Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000) ("In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery.").

Even if MassMutual can meet its burden to establish work product or attorney-client protections for communications relating to or constituting its "forensic review" or AVM, MassMutual has unquestionably waived any such protections by putting its "forensic review" and AVM directly at issue in its Complaint.  Having expressly relied upon those analyses in its pleading, MassMutual cannot now preclude Defendants from testing its allegations through legitimate discovery.  Defendants should be permitted to receive all documents regarding the

"forensic review," including any reports or analyses (including drafts), all assumptions and data inputs for the AVM (including assumptions or data that were considered and rejected), the algorithms used by the AVM, the results of any iterations of the AVM that were not disclosed in the Complaint, any other AVM models tested, and any reports, discussions or e-mails about the "forensic review" or AVM.

Courts have repeatedly held that "fairness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.' . . . . [A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)) (internal citations and emphasis omitted). The First Circuit has explained that both the attorney-client privilege and work product protection are waived where "the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and . . . allow[ing] the privilege to protect against disclosure of that information would have been unfair to the opposing party." *In re Keeper of the Records*, 348 F.3d 16, 24 (1st Cir. 2003) (internal citations and quotation marks omitted); *see also Chevron Corp.* v. *Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."). Indeed, "the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." *Greater Newburyport Clamshell Alliance* v. *Pub. Serv. Co. of N.H.*, 838 F.2d 13, 20 (1st Cir. 1988).

Here, fairness considerations militate in favor of requiring disclosure because, in opposing Defendants' motion to dismiss, MassMutual relied upon the "factual" nature of its "forensic review" and AVM allegations, contending that "Defendants' attempt to challenge the reliability of the automated valuation model analysis presents a factual issue that cannot be resolved on a motion to dismiss." (Pl's. Opp'n. to Mot. to Dismiss at 21.)  In denying Defendants' motion to dismiss, this Court then agreed with MassMutual that "arguments regarding the methodological flaws of the AVM . . . are premature at the motion to dismiss stage." *Mass. Mut. Life Ins. Co.*, 843 F. Supp. 2d at 204.  The time has now come to test these factual issues concerning the methodology, reliability and accuracy of MassMutual's forensic review using its AVM.

MassMutual's position that it may selectively rely on aspects of its "forensic review" and AVM in its Complaint, oppose a motion to dismiss on the ground that its "forensic review" and AVM present "factual" matters, and then block all discovery into those "factual" matters, is a perfect example of a party impermissibly seeking to use privilege as both a "sword and shield."  Such bait-and-switch litigation tactics should be rejected by this Court.  Where, as here, "data developed by a litigant to support its . . . claim [cannot] be analyzed without the detailed information assertedly protected by work product privilege, the privilege must yield to the need of the litigant seeking discovery." *UNR Indus., Inc.* v. *Cont'l Ins. Co.*, No. 85 C 3532, 1992 U.S. Dist. LEXIS 2679, at *14-15 (N.D. Ill. Mar. 6, 1992).  To rebut MassMutual's repeated allegations as to the reliability of the "forensic review," Defendants must be able to test that review through discovery into its inputs and methodologies as well as the circumstances underlying that review.  MassMutual's assertions of its AVM's supposed reliability, and the central role of the AVM results in its allegations, particularly warrant this discovery.  "[S]ome

valuation models may be more or less reliable than other models, have more or less predictive

power, or hew more or less closely to the conventional wisdom on a subject." *In re Salomon*

*Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 252 (S.D.N.Y. 2005).  The accuracy of

MassMutual's "forensic review" and AVM might, for example, depend upon their underlying

data, algorithms, assumptions and methodologies or on MassMutual manipulating all of these

factors in order to reach a pre-determined result.  In challenging the AVM valuations,

Defendants should be entitled to show a fact-finder evidence of the circumstances of their

creation and development.[11]

> **B.    Production Is Independently Required Because Defendants
> Have a Substantial Need for the Requested Documents.**

Even if this Court were to find that documents related to MassMutual's "forensic

review" or AVM could be considered work product, a point that Defendants do not concede, [12]

and as to which MassMutual bears the burden, and even if it is determined that its reliance on the

forensic review and AVM in its Complaint did not waive any applicable protections,

MassMutual should still be required to produce those documents based on Defendants'

substantial need.  "Despite the protection given work product, a party may obtain another party's

work product if the materials are otherwise discoverable and a party has substantial need for the

materials to prepare its case and cannot, without undue hardship, obtain a substantial equivalent

---

[11]    To the extent that MassMutual might rely on *Ambac Assurance Corp.* v. *DLJ Mortgage Capital, Inc.*, 939 N.Y.S.2d 333 (N.Y. App. Div. 2012), in which certain documents relating to "re-underwriting" of loans were held privileged, that case rested on principles of New York state law not applicable here and arose where, after determining that defendants "did not challenge the existence of a privilege until their reply" thereby ceding their challenge, the appellate court found that the lower court had erred in granting the motion to compel. *Id.* at 452.

[12]    As noted previously, Defendants also reject MassMutual's claim that the "forensic review" and AVM-related documents are attorney-client privileged.

by other means." *Clark* v. *Edison*, Civil Action No. 09-40040-FDS, 2010 U.S. Dist. LEXIS 92859, at *5 (D. Mass. Aug. 16, 2010) (citing Fed. R. Civ. P. 26(b)(3)).   Documents concerning MassMutual's own "forensic review" and AVM—which MassMutual unreasonably insists upon withholding—are indispensable to Defendants' defense of MassMutual's allegations regarding appraisals, LTV ratios and originators' compliance with underwriting guidelines.

> **C.    If MassMutual Is Not Required to Produce the "Forensic Review," It Should Be Prohibited From Relying on It or Otherwise Referring to It.**

To the extent that MassMutual is allowed to shield documents related to its "forensic review," and the AVM on which it relies, it should be prohibited from referring to or using those documents in this litigation.[13]  *See Aumand* v. *Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 86-87 (D.N.H. 2009) (refusing to allow defendant to "refer" to a document for which it had waived the privilege "without first producing it to the plaintiffs" and noting that "[t]o allow [defendant] to question the plaintiffs' witnesses about [the document] without disclosing it, then, would 'sustain a unilateral testimonial use of work-product materials' as a sword, rather than a shield") (internal citations omitted).  MassMutual cannot refuse to produce relevant discoverable information and then use that information affirmatively in pleadings, motions (including summary judgment briefing) or at trial.

Absent disclosure or such a preclusion order, MassMutual would be opportunistically asserting privilege and work product to shield its selective disclosure, thereby improperly impeding Defendants from challenging the credibility and reliability of the "forensic review" and AVM which, given their prominence in the Complaint, could be key components of

---

[13]    Such a preclusion order should also extend to any modified version of the "forensic review" or AVM because otherwise Defendants would be unfairly impeded from testing its accuracy and credibility in reference to the version pled in MassMutual's Complaint.

summary judgment and a trial on the merits. *Aumand*, 611 F. Supp. 2d at 86 (precluding use by defendant of purportedly privileged document at trial because, by refusing to disclose that document, plaintiffs have been "[left] in the dark as to what [the document] actually provides"); *see also Kingsway Fin. Servs.* v. *Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB) (HBP), 2008 U.S. Dist. LEXIS 105222, at *33-34 (S.D.N.Y. Dec. 31, 2008) (explaining that because plaintiff "has chosen to stand on its privilege, it cannot make selective disclosure of its communications" and precluding plaintiff from offering any evidence with respect to its purportedly privileged communications "both at trial and in connection with any dispositive motion").

## CONCLUSION

For the reasons stated above, Defendants' cross-motion to compel should be granted and MassMutual should be ordered to produce documents related to the AVM and its "forensic review" in response to Request Nos. 52-54 and 72 or, at a minimum, MassMutual should be prohibited from affirmatively using the AVM and "forensic review" in support of its claims.

Dated: October 16, 2012
        Boston, Massachusetts

                                 Respectfully submitted,


                          By:    /s/  Zachary C. Kleinsasser
                                 Mark A. Berthiaume (BBO No. 041715)
                                 Zachary C. Kleinsasser (BBO No. 664291)
                                 GREENBERG TRAURIG, LLP
                                 One International Place
                                 Boston, Massachusetts 02110
                                 Telephone: (617) 310-6007
                                 Fax: (617) 310-6001
                                 berthiaumem@gtlaw.com

                                 Of Counsel:

                                 Richard H. Klapper (klapperr@sullcrom.com)
                                 (admitted *pro hac vice*)
                                 David M.J. Rein (reind@sullcrom.com)
                                 (admitted *pro hac vice*)
                                 Jordan T. Razza (razzaj@sullcrom.com)
                                 (admitted *pro hac vice*)
                                 Kamil E. Redmond (redmondka@sullcrom.com)
                                 (admitted *pro hac vice*)
                                 SULLIVAN & CROMWELL LLP
                                 125 Broad Street
                                 New York, New York  10004-2498
                                 Telephone:  (212) 558-4000
                                 Fax: (212) 558-3588

                                 *Attorneys for Defendant Goldman, Sachs & Co.*


                          By:    /s/  Kathy B. Weinman
                                 Kathy B. Weinman (BBO No. 541993)
                                 Azure Abuirmeileh (BBO No. 670325)
                                 COLLORA LLP
                                 600 Atlantic Avenue
                                 Boston, Massachusetts  02210
                                 Telephone:  (617) 371-1000
                                 Fax: (617) 371-1037
                                 kweinman@collorallp.com
                                 aabuirmeileh@collorallp.com

Of Counsel:

Thomas C. Rice (trice@stblaw.com)
(admitted *pro hac vice*)
David J. Woll (dwoll@stblaw.com)
(admitted *pro hac vice*)
Alan Turner (aturner@stblaw.com)
(admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502

*Attorneys for RBS Securities Inc. and Deutsche Bank Securities Inc.*


By:     /s/ *Jeffrey L. McCormick*
Jeffrey L. McCormick, Esq. (BBO No. 329740)
ROBINSON DONOVAN, P.C.
1500 Main Street, Suite 1600
Springfield, Masachusetts 01115
Telephone:  (413) 732-2301
Fax:  (413) 785-4658
jmccormick@robinsondonovan.com

Of Counsel:

Robert H. Baron (rbaron@cravath.com)
(admitted *pro hac vice*)
Karin A. DeMasi (kdemasi@cravath.com)
(admitted *pro hac vice*)
J. Wesley Earnhardt (wearnhardt@cravath.com)
(admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700

*Attorneys for J.P. Morgan Securities LLC*

By:   _/s/  Andrea J. Robinson_____
Jeffrey B. Rudman (BBO No. 433380)
Andrea J. Robinson (BBO No. 556337)
Christopher B. Zimmerman (BBO No. 653854)
Adam J. Hornstine (BBO No. 666296)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone:  (617) 526-6000
Fax:  (617) 526-5000
jeffrey.rudman@wilmerhale.com
andrea.robinson@wilmerhale.com
christopher.zimmerman@wilmerhale.com
adam.hornstine@wilmerhale.com

Katherine B. Dirks (BBO No. 673674)
WILMER CUTLER PICKING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
katherine.dirks@wilmerhale.com

*Attorneys for Defendant Merrill Lynch,
Pierce, Fenner & Smith Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NE) and paper copies will be sent to those indicated as nonregistered participants on October 16, 2012.


Dated: October 16, 2012                    */s/ Zachary C. Kleinsasser*
                                           Zachary C. Kleinsasser