**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; DEUTSCHE BANK SECURITIES INC.; GOLDMAN, SACHS & CO., INC.; J.P. MORGAN SECURITIES LLC; AND RBS SECURITIES INC., <br><br> Defendants. | No. 11-cv-30285-MAP |

**JOINT STATEMENT REGARDING PROPOSAL FOR EXPERT DISCOVERY**

Pursuant to this Court's June 27, 2012 Scheduling Order, counsel for Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") and counsel for Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities Inc., Goldman, Sachs & Co., J.P. Morgan Securities LLC, and RBS Securities Inc. (collectively, "Defendants") met and conferred on October 16, 2012 regarding a proposal for expert discovery. Having met and conferred, the parties jointly propose an expert discovery plan as set forth below. To the extent the parties were unable to reach agreement on certain issues, MassMutual and Defendants have included their separate positions herein.

**I.     INTRODUCTION**

<u>MassMutual's Statement</u>

This action is one of 11 actions filed by MassMutual in this Court asserting claims under the Massachusetts Uniform Securities Act (the "Massachusetts Securities Act") for

misrepresentations in the sale of residential mortgage-backed securities (or "Certificates") to MassMutual.  This action asserts claims for primary liability under Section 410(a) of the Massachusetts Securities Act against five Underwriters that sold Certificates to MassMutual in 12 securitizations sponsored by Residential Funding Corporation or Residential Funding Company, LLC ("Residential Funding").  The Certificates were collateralized by 37,000 underlying mortgage loans from multiple originators.  MassMutual alleges that each of Defendants sold it Certificates by means of materially false or misleading statements regarding (i) the underwriting guidelines applicable to the underlying mortgage loans; (ii) the appraisal standards applicable to the mortgaged properties; and (iii) the resulting loan-to-value (or "LTV") ratios for the underlying mortgage loans.

A primary source of evidence to establish these misrepresentations is likely to be expert testimony, including the conclusions drawn from an expert re-underwriting of the mortgage loans underlying the relevant securitizations.  Re-underwriting involves review and analysis of the loan file for each mortgage loan[1] and an evaluation of whether the underwriting guidelines in effect at the time were followed.  Because there are 37,000 mortgage loans underlying the relevant securitizations, it is cost- and time-prohibitive for the parties to undertake to re-underwrite each of the 37,000 loans.  As set forth in more detail below, a statistical sampling approach is an efficient and cost-effective option that should be used in this case, and that has been approved by courts in similar cases.

The parties have reached agreement regarding the schedule for expert reports and the timing of the production of loan tapes necessary to begin the process of statistical sampling and

---

[1] Loan files typically include the mortgage application (including all information provided by the borrower), any verification of employment or income, property appraisals, credit reports, and underwriter notes, and are typically hundreds of pages long.

2

re-underwriting of loan files. A disagreement remains, however, regarding MassMutual's request for a threshold determination as to the use of sampling and the selection of an appropriate sampling methodology to be employed in this case.

MassMutual respectfully submits that it is necessary and appropriate for the Court to make a threshold determination of the appropriate sampling methodology for the loans to be re-underwritten through early submission of sampling expert reports and motion practice. The sole issue to be resolved at this stage will be whether the sampling methodology proposed in the expert reports yields a sample sufficiently representative of the entire population of loans underlying each securitization such that any conclusions drawn from the sample in the re-underwriting can be applied to the population as a whole. This determination can and should be done early in the litigation so that none of the parties or the Court wastes time and resources conducting re-underwriting and related analyses that might later be deemed inapplicable to the ultimate question regarding the quality of loans across the affected mortgage pools. Contrary to Defendants' argument, the only fact discovery necessary to evaluate the sufficiency of the sampling methodology and its application to the pool of loans is the production of loan tapes, which are spreadsheets that identify all loans in the pool and their characteristics, such as loan numbers, property addresses, and original principal balances.

Defendants' Statement

This action arises out of MassMutual's claims under the Massachusetts Securities Act alleging that the offering materials for 12 securitizations through which it purchased the Certificates – and for which Defendants acted solely as underwriters – contained misrepresentations. Defendants contend that they are not liable under the Massachusetts Securities Act because, among other things, (1) the offering materials did not contain material

misstatements or omissions, (2) that even if there were any material misstatements or omissions, MassMutual had knowledge of them, (3) Defendants acted in good faith, with reasonable care and due diligence, with respect to any alleged misstatements or omissions, and (4) MassMutual's claims are untimely.

Defendants acknowledge that expert discovery is appropriate and important in this case. The parties have met and conferred regarding certain initial issues relating to expert discovery, and have been able to agree on a proposed modification to the June 27, 2012 schedule set by the Court for the submission of affirmative and rebuttal expert reports. And as requested by MassMutual, Defendants have agreed to prioritize the production of loan tapes, and intend to produce loan tapes in their possession, custody or control prior to November 2. Defendants are unable to attest that the loan tapes in their possession are identical to the final loan tapes for each of the offerings at issue. In order to retrieve the final loan tapes, MassMutual will need to subpoena the relevant third party, such as the trustee.

Defendants cannot, however, assent to MassMutual's premature and improper attempt to have the Court pre-approve MassMutual's as-of-yet undisclosed methodology for sampling loans from the securitizations at issue in order to prove its claims. Defendants cannot, and should not, have to challenge MassMutual's sampling methodology without the benefit of fact discovery, which is in its initial stages. Contrary to MassMutual's contention, such discovery will bear on the reliability and admissibility of whatever sampling methodology MassMutual proposes to this Court.

## II.     THE SCHEDULE FOR EXPERT AND EXPERT REBUTTAL REPORTS

The parties have conferred and agree that the schedule for the submission of affirmative and rebuttal expert reports that was provided for by this Court's June 27, 2012 Scheduling Order should be modified as follows:

4

| MassMutual's affirmative expert reports due | July 31, 2013 (previously ordered) |
|---|---|
| Defendants' affirmative expert reports and rebuttal expert reports due | September 30, 2013 (previously ordered) |
| MassMutual's rebuttal expert reports due | November 15, 2013 (new deadline) |

This revised schedule provides an additional deadline for MassMutual to serve rebuttal expert reports, which was not provided for in the June 27 Scheduling Order, and does not impact the December 31, 2013 close of expert discovery.

## III.   EARLY RULING REGARDING USE OF STATISTICAL SAMPLING

<u>MassMutual's Statement</u>

MassMutual proposes to use a statistically valid random sample of loans for each of the 12 securitizations as representative of the population of mortgage loans in each of those securitizations. Any conclusions drawn from the statistically valid random sample will apply to the population as a whole. This very procedure has been approved by numerous courts in similar cases, and it is the best and most effective alternative to the impracticable task of attempting to re-underwrite each of the 37,000 mortgage loans underlying the 12 securitizations in this case.

Sampling will streamline expert discovery and the presentation of evidence at trial. As described above and in the May 28, 2012 Joint Statement, MassMutual intends to use an expert re-underwriting of loan files to demonstrate the material misrepresentations about the characteristics and qualities of the underlying loans across the pools. Given the time necessary to conduct the re-underwriting analysis, MassMutual proposed during the parties' meet and confer that the threshold sampling issues be resolved early so that MassMutual could move forward with re-underwriting a statistically significant sample of mortgage loans. Defendants, although not rejecting statistical sampling in the abstract, continue to resist any schedule that would allow the Court to make an early determination on a sampling methodology.

Defendants understandably do not object in principle to the use of statistical sampling; it has been widely approved and clearly would be appropriate here. *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, Case No. 08/602825, 2010 WL 5186702, at *5 (N.Y. Super. Ct., Dec. 22, 2010) (approving use of statistical sampling for mortgage loan files in residential mortgage backed securities case); *United States v. United Shoe Mach. Corp.*, 110 F. Supp. 295, 305-06 (D. Mass. 1953) (endorsing use of sampling); *Republic Servs. Inc. v. Liberty Mutual Ins. Co.*, No. Civ. A 03-494-KSF, 2006 WL 2844122 (E.D. Ky. Oct. 2, 2006) (the very "essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole . . . [and] the applicability of inferential statistics [has] long been recognized by the courts"); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 754 (2004) (approving use of statistical sampling); *Johnson v. Big Lots Stores, Inc.*, Civil Action Nos. 04-3201, 05-6627, 2008 WL 1930681, at *3 (E.D. La. Apr. 29, 2008) (describing methodology used by expert as "an accepted technique in statistical analysis" when expert explained that he derived the figures discussed after calculating the mean, standard deviation, and 95% confidence interval for all responses); *Pruchniewski v. Leavitt*, No. 8:04-CV-2200-T-23TBM, 2006 WL 2331071, at *15 (M.D. Fla. Aug. 10, 2006) (affirming decision based upon statistical sampling evidence with 90% confidence interval); *Ross v. C.I.R.*, No. 9416-87, 1989 WL 155491 (U.S. Tax Court December 28, 1989) (rejecting challenge to a statistical sampling method that used a 95% confidence limit); *see also* David H. Kaye & David A. Freedman, Reference Manual on Scientific Evidence at 117-21, 242-44 (2d ed. 2000) ("Traditionally, scientists adopt the 95% level of confidence, which means that if 100 samples of the same size were drawn, the confidence interval expected for at least 95 of the samples would be expected to include the true population value.").

Instead, Defendants contend that a threshold determination regarding the sampling methodology cannot be made without full and unfettered fact discovery and the results of MassMutual's expert re-underwriting. Defendants propose that they be allowed to challenge the samples and the methodology used to select them after MassMutual serves its expert reports on July 31, 2013—and after MassMutual expends significant time and expense to re-underwrite the sampled loans. Defendants' "wait and see" approach on an early determination regarding the use of sampling here would guarantee the exact problem that the sampling process is designed to avoid, with the parties and the Court potentially wasting time and resources on a re-underwriting process that Defendants no doubt will argue is statistically unsound. None of Defendants' arguments against an early determination on the sampling issue is persuasive.

First, contrary to Defendants' professed concern, an early determination regarding MassMutual's sampling methodology and whether the samples selected pursuant to that methodology are representative of the populations of loans will not limit discovery Defendants seek regarding other, non-sampled loans. Defendants are free to seek discovery into any loan files that they wish to review and to present whatever evidence from those files they believe supports their case (subject to MassMutual's objections).

Second, Defendants are incorrect that the parties will not have exchanged sufficient discovery to allow for an early determination as to a sampling methodology. Once loan tapes are produced by Defendants, the parties will have all the information they need to propose and respond to each other's positions as to the sampling methodology and resulting samples. Scientific sampling methodologies are well-established, and whether a particular sampling methodology yields a sample that is representative of the population is not dependent on particular facts learned in discovery. All that is needed is identification of the population of

loans to be sampled, which is contained on the loan tapes that Defendants have agreed to produce by November 2, 2012. Moreover, to the extent any characteristics about the loans are relevant to the selection of a sample, those characteristics are also contained on the loan tapes.

Defendants claim that they need to see what is in particular loan files or the results of MassMutual's re-underwriting before they will be able to challenge the sampling methodology and resulting samples. But this is contrary to the very concept and purpose of sampling. The selection of a sample is not dependent on the conclusions to be drawn from the sample or any group of loans that fall inside or outside the sample.

Recognizing that a sampling methodology and statistically significant samples can and should be decided early, Judge Denise Cote of the Southern District of New York has ordered early motion practice to resolve challenges to the sampling methodology and resulting samples set forth in early expert reports filed in the 16 residential mortgage-backed securities actions brought by the Federal Housing Finance Agency against many of these same defendants. *See* Declaration of Molly Stephens, filed concurrently herewith ("Stephens Decl."), Ex. A. The only case Defendants cite that purported to reject early briefing on the admissibility of a sampling methodology—*Assured Guaranty v. DB Structured Products*—is easily distinguishable. In *Assured Guaranty*, the court rejected early briefing because no expert report had been submitted. *See* Stephens Decl. Ex. B. Here, on the other hand, MassMutual proposes the exchange of sampling expert reports before the parties brief challenges to the sampling methodology and resulting samples set forth in the reports.

Put simply, all the benefits afforded by statistical sampling of loan files in this case will be lost if the parties and the Court are forced to wait to address the sufficiency of sampling and MassMutual's methodology until after samples have been drawn, loan files have been produced,

re-underwriting of those loan files has taken place, and expert reports have been exchanged. If MassMutual's or Defendants' sampling method or sampling-based approach is rejected by the Court at that late stage in the game, either the entire process will have to commence again or one or both sides will be unable to present their respective cases. If MassMutual must alternatively proceed through discovery with the assumption that its chosen sampling methodology will not be permitted, specific evidence may have to be developed as to each of the 37,000 loans, including evidence from numerous third parties (including the varying originators, servicers, trustees, mortgage brokers, appraisers, borrowers, and employers)—all at enormous cost and likely resulting in months or years of delay in this case. Sampling was designed to provide a scientifically valid economical and timely alternative to just such a prohibitively wasteful exercise.

MassMutual accordingly requests that the Court order the following schedule for the early exchange of sampling expert reports and challenges to the opinions expressed in any such reports, including under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)[2]:

| | |
|---|---|
| December 14, 2012 | Sampling expert reports exchanged |
| January 21, 2013 | Last day to file motions challenging sampling expert reports |
| February 11, 2013 | Last day to file replies in support of sampling expert reports |

---

[2] This proposed schedule presumes that final loan tapes (necessary for MassMutual's expert to select the statistically valid random samples) are produced no later than November 2, 2012. As discussed above, an early decision on sampling will be limited to the sampling methodology and whether the samples drawn are representative of the populations of loans in the securitizations. Any conclusions drawn from the samples will be presented in expert reports to be filed on July 31, 2013.

Defendants' Statement

MassMutual alleges that the loans backing its Certificates had particular characteristics or were originated in a manner different from that represented in the offering materials. As such, Defendants agree that loan files will be the subject of discovery in this case, and that fact and expert discovery is necessary to determine whether MassMutual's allegations are supported or contradicted by an analysis of the loan files. However, MassMutual's proposal that this Court approve a loan sampling methodology prior to even understanding what precise questions the sampling methodology will purport to answer, and prior to understanding what precise loan characteristics it will purport to analyze, is contrary to the normal and appropriate course of litigation under the Federal Rules. *See, e.g.*, American Bar Association, Econometrics: Legal, Practical, and Technical Issues 8 (2005) ("Research begins with a clear formulation of a research question. The data to be collected and analyzed must relate directly to this question; otherwise, appropriate inferences cannot be drawn from the statistical analysis.").

MassMutual has represented to Defendants that it intends to try to prove its allegations by selecting a sample of loan files, assessing that sample set, and then applying its results to the population as a whole. Putting aside whether MassMutual will ultimately be able to prove any of its allegations through sampling, Defendants have not – and do not intend to – prevent MassMutual from engaging in such a review. However, as Defendants represented in the May 28, 2012 Joint Statement, Defendants must be allowed to seek discovery of whatever loan files they would like to review, and be permitted to develop their defenses as they deem necessary, including by reviewing and presenting evidence regarding loan files that differ from those that MassMutual selects to review. *See, e.g.*, *Hinterberger v. Catholic Health Sys., Inc.*, No. 08-cv-00380S(F), 2012 WL 2953653, at *11 (W.D.N.Y. July 19, 2012) ("Use of a sample is a practical

method to address potentially voluminous discovery issues. Such practical and cost-effective techniques to do so, however, cannot override the general and salutary objective of federal civil litigation and the exercise of available discovery devices to search and obtain the true facts of the case." (internal citation omitted)).

MassMutual seeks what the Defendants believe is premature motion practice to resolve any potential issues regarding its loan sampling protocol. However, it is not feasible to resolve any such issues at such an early stage of the proceedings. As an initial matter, fact discovery is in its initial stages and will not close until June 30, 2013, over eight months from now. It is both impossible and inappropriate for MassMutual to seek to force Defendants to challenge MassMutual's sampling methodology when discovery that will bear on the reliability and admissibility of the methodology and its results has barely begun. *See*, *e.g.*, *Assured Guar. v. DB Structured Prods.*, No. 650705/2010 (N.Y. Sup. Ct. Sept. 12, 2011) (ruling that it was "premature" at an early stage of an action to allow briefing on admissibility of potential sampling protocol where plaintiff "has not yet obtained an expert review of the loans" and its "request is based on a hypothetical method of statistical sampling"). Contrary to MassMutual's assertion, loan tapes are not the only relevant piece of discovery in this case.

Moreover, MassMutual proposes that the parties resolve any sampling issues before it has even conducted a re-underwriting of the sample loans. Defendants cannot possibly be expected to have knowledge of all potential issues concerning a sampling methodology propounded by MassMutual before MassMutual has even applied that methodology to the mortgage loans at issue in the case. In other words, MassMutual is attempting to put the cart before the horse. Sampling is not a one-size-fits-all proposition. In order to design a sampling methodology, MassMutual must, at a minimum, (1) define the question it seeks to answer with its sample;

11

(2) define the population from which the question may be answered; (3) specify the procedure it will use to draw the sample; and (4) determine an appropriate sample size. But MassMutual cannot reliably answer those questions at this juncture of the proceedings. For example, without any significant amount of discovery having taken place, it is not known what characteristics, if any, of the loans may correlate with alleged material departures from the applicable underwriting guidelines. It may also be the case that there are material differences among the originators' underwriting practices or that a material number of loans for a given originator do not have available or complete loan files which will bear directly on the question to be answered by any proposed sample. The parties simply cannot answer those questions now without any third-party discovery.[3]

    Defendants must be given the opportunity to test MassMutual's undisclosed methodology and the propriety of any proposed sample, something they cannot do in the abstract without a full factual record. Any meaningful sampling protocol necessarily requires a significant amount of fact discovery and data analysis. But MassMutual would have this Court approve its undisclosed sampling methodology without regard to what the facts ultimately may show. MassMutual appears to be arguing that the Court should disregard any future fact discovery and prematurely approve MassMutual's sampling methodology because it would be most convenient for MassMutual to prove its case if a particular sampling methodology were approved at the outset. That is not a proper criterion upon which to determine the reliability or admissibility of a

---

[3] Defendants will be discussing with MassMutual the timing of its identification of allegedly defective loans. In order to respond to MassMutual's re-underwriting review and breach allegations, Defendants' experts will need to conduct their own time intensive loan analysis. Given that Defendants' experts will not be in a position to assess MassMutual's loan-by-loan breach allegations until they know what those allegations are, MassMutual should identify which loans are alleged to be in breach, and in what way, sufficiently in advance so that Defendants' experts will be able to conduct their loan-by-loan analysis.

methodology. Courts do not approve expert methodologies at the outset of a litigation merely because it might facilitate one party's ability to prove its case. Given that MassMutual's undisclosed (and yet unapplied) methodology potentially will be used to attempt to establish liability for all 12 offerings at issue, this Court should not preemptively approve a methodology before significant fact and expert discovery has taken place.

MassMutual's suggestion that great cost and delay will result if its sampling methodology is not approved by the Court at this early juncture overstates the issue. And MassMutual has provided no justification as to why its sampling methodology should be treated differently from any other expert methodology (including other expert methodologies that may be used in this action for other technical topics that may be the subject of expert discovery). The proper approach here, as in any civil case, is for each party to present its evidence in whichever way it chooses, through sampling or otherwise, based on a developed factual record and subject to adversarial examination and the rules of evidence. MassMutual's burden to prove its own allegations does not justify its attempt to obtain a premature ruling from this Court at the outset of the case before an adequate record exists to do so.[4]

## IV. PRIORITIZING PRODUCTION OF DOCUMENTS TO FACILITATE EXPERT DISCOVERY

The parties agree that Defendants will produce the loan tapes in their possession, custody, or control for the securitizations at issue in this action by November 2, 2012.

---

[4] To the extent the Court is inclined to allow MassMutual to raise its sampling methodology at this premature stage of the case, Defendants require an opportunity to respond to MassMutual's expert report. However, Defendants should not be required to submit their own expert report regarding sampling at this early juncture.

DATED:  October 29, 2012          PLAINTIFF MASSACHUSETTS MUTUAL LIFE
                                   INSURANCE COMPANY


By:  */s/ Edward J. McDonough Jr.*
     Edward J. McDonough Jr. (BBO 331590)
     Stephen E. Spelman (BBO 632089)
     Egan, Flanagan and Cohen, P.C.
     67 Market Street, P.O. Box 9035
     Springfield, Massachusetts  01102
     Telephone:  (413) 737-0260
     Fax:  (413) 737-0121
     ejm@efclaw.com; ses@efclaw.com

     Of counsel:

     QUINN EMANUEL URQUHART &
     SULLIVAN, LLP

     Philippe Z. Selendy (admitted *pro hac vice*)
     Jennifer J. Barrett (admitted *pro hac vice*)
     51 Madison Avenue, 22nd Floor
     New York, NY 10010
     (212) 849-7000
     Fax (212) 849-7100

     A. William Urquhart (admitted *pro hac vice*)
     Harry A. Olivar, Jr. (admitted *pro hac vice*)
     Molly Stephens (admitted *pro hac vice*)
     865 South Figueroa Street, 10th Floor
     Los Angeles, CA 90017
     (213) 443-3000
     Fax (213) 443-3100


     DEFENDANT J.P. MORGAN SECURITIES LLC

By  */s/ Jeffrey L. McCormick*
   Jeffrey L. McCormick, Esq., BBO #329740
     jmccormick@robinsondonovan.com
    Direct Fax (413) 452-0327
   Robinson Donovan, P.C.
   1500 Main Street, Suite 1600
   Springfield, Massachusetts 01115
   Phone (413) 732-2301  Fax (413) 785-4658

14

Of Counsel:

Robert H. Baron (rbaron@cravath.com)
Karin A. DeMasi (kdemasi@cravath.com)
J. Wesley Earnhardt (wearnhardt@cravath.com)
  Cravath, Swaine & Moore LLP
  825 Eighth Avenue
  New York, New York 10019
  Phone (212) 474-1000  Fax (212) 474-3700


DEFENDANT MERRILL LYNCH, PIERCE, FENNER & SMITH INC.


By   */s/ Jeffrey B. Rudman*
   Jeffrey B. Rudman, Esq., BBO #433380
   Andrea J. Robinson, Esq., BBO #556337
   Christopher B. Zimmerman, Esq., BBO #653854
   Adam J. Hornstine, Esq., BBO #666296
   Brian J. Boyle, Jr., Esq., BBO #676683
    Wilmer Cutler Pickering Hale and Dorr LLP
    60 State Street
    Boston, MA 02109
    Phone (617) 526-6000  Fax (617) 526-5000


DEFENDANT DEUTSCHE BANK SECURITIES INC.


By   */s/ Kathy B. Weinman*
   Kathy B. Weinman, Esq., BBO #541993
   Azure Abuirmeileh, Esq., BBO #670325
     kweinman@collorallp.com
     aabuirmeileh@collorallp.com
    Collora LLP
    100 High Street
    Boston, Massachusetts 02110
    Phone (617) 371-1000  Fax (617) 371-1037

Of Counsel:

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)

    Alan Turner (aturner@stblaw.com)
      Simpson Thacher & Bartlett LLP
      425 Lexington Avenue
      New York, New York 10017
      Phone (212) 455-2000  Fax (212) 455-2502

DEFENDANT GOLDMAN, SACHS & CO.

By   */s/ Mark A. Berthiaume*
    Mark A. Berthiaume, Esq. BBO #041715
    Zachary C. Kleinsasser, Esq., BBO #664291
      berthiaumem@gtlaw.com
      kleinsasserz@gtlaw.com
    Greenberg Traurig, LLP
    One International Place
    Boston, MA 02110
    Phone (617) 310-6000  Fax (617) 310-6001

Of Counsel:

Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
David M.J. Rein (reind@sullcrom.com)
  Sullivan & Cromwell LLP
  125 Broad Street
  New York, NY 10004-2498
  Phone (212) 558-4000  Fax (212) 558-3588

DEFENDANT RBS SECURITIES INC.

By   */s/ Kathy B. Weinman*
    Kathy B. Weinman, Esq., BBO #541993
    Azure Abuirmeileh, Esq., BBO #670325
      kweinman@collorallp.com
      aabuirmeileh@collorallp.com
    Collora LLP
    100 High Street
    Boston, Massachusetts 02110
    Phone (617) 371-1000  Fax (617) 371-1037

Of Counsel:

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan Turner (aturner@stblaw.com)
  Simpson Thacher & Bartlett LLP
  425 Lexington Avenue
  New York, New York 10017
  Phone (212) 455-2000  Fax (212) 455-2502

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 29th day of October, 2012.

*/s/ Edward J. McDonough Jr.*
_____
Edward J. McDonough Jr.