IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————x

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

                       Plaintiff,

        v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH INC.; DEUTSCHE BANK
SECURITIES INC.; GOLDMAN,
SACHS & CO., INC.; J.P. MORGAN
SECURITIES LLC; and RBS
SECURITIES INC.,

                   Defendants.

———————————————————————x

Civil Action No.  3:11-cv-30285-MAP

Oral Argument Requested

**REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO
COMPEL DISCOVERY RESPONSES**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................2

    A.    Defendants' Cross-Motion Is Ripe. ........................................................................2

    B.    MassMutual Has Not Met Its Burden to Establish that Documents Related
        to Its "Forensic Review" and AVM Are Attorney-Client Privileged or
        Work Product Protected. ........................................................................................3

    C.    MassMutual's Attempted Abandonment of Its "Forensic Review" and
        AVM Does Not Obviate Discovery. ........................................................................7

CONCLUSION........................................................................................................................10

# TABLE OF AUTHORITIES

*Page(s)*

CASES

*Ambac Assurance Corp.* v. *DLJ Mortgage Capital, Inc.*,
   939 N.Y.S.2d 333 (N.Y. App. Div. 2012) .......................................................................... 5-6

*Andrews* v. *Metro North Commuter Railroad Co.*,
   882 F.2d 705 (2d Cir. 1989) .......................................................................................8

*Beal* v. *General Motors Corp.*,
   354 F. Supp. 423 (D. Del. 1973) ..................................................................................8

*Davis* v. *Astrue*,
   No. C 06-6108 MHP, 2007 WL 2088580 (N.D. Cal. July 18, 2007) .....................................8

*Federal Deposit Insurance Corp.* v. *Ogden Corp.*,
   202 F.3d 454 (1st Cir. 2000) ........................................................................................3

*Federal Deposit Insurance Corp.* v. *R.W. Beck, Inc.*,
   No. 01-CV-11982-RGS, 2004 WL 1474579 (D. Mass. July 1, 2004) ...................................3

*Greater Newburyport Clamshell Alliance* v. *Public Service Co. of New Hampshire*,
   838 F.2d 13 (1st Cir. 1988) ..........................................................................................3

*In re Grand Jury Subpoena*,
   220 F.R.D. 130 (D. Mass. 2004) ....................................................................................6

*InterGen N.V.* v. *Grina*,
   344 F.3d 134 (1st Cir. 2003) .........................................................................................8

*Massachusetts Mutual Life Insurance Co.* v. *Residential Funding Co.*,
   843 F. Supp. 2d 191 (D. Mass. 2012) ............................................................................5

*MBIA Insurance Corp.* v. *Countrywide Home Loans, Inc.*,
   No. 602825/08, 2011 WL 7640152 (N.Y. Sup. Ct. Jan. 25, 2011) ......................................5

*Raleigh Flex Owner I, LLC* v. *MarketSmart Interactive, Inc.*,
   No. 1:09 CV 699, 2011 WL 923356 (M.D.N.C. Mar. 7, 2011) ........................................ 8-9

*Stern* v. *United States Distict Court*,
   214 F.3d 4 (1st Cir. 2000) .............................................................................................3

*Sunkyong International, Inc.* v. *Anderson Land & Livestock Co.*,
   828 F.2d 1245 (8th Cir. 1987) .......................................................................................9

*Page(s)*

*Ultra-Temp Corp.* v. *Advanced Vacuum Systems, Inc.*,
194 F.R.D. 378 (D. Mass. 2000) ...............................................................................8

*UNR Industries, Inc.* v. *Continental Insurance Co.*,
No. 85 C 3532, 1992 WL 51708 (N.D. Ill. Mar. 6, 1992) .......................................6

*Vicor Corp.* v. *Vigilant Insurance Co.*,
674 F.3d 1 (1st Cir. 2012) ........................................................................................7

*Wallace* v. *Huntington National Bank*,
Nos. 2:09-CV-104, 2:09-CV-469, 2010 WL 3603494 (S.D. Ohio Sept. 10, 2010) .................2

**RULES**

Fed. R. Civ. P. 12(f)(1) ...............................................................................................8

Fed. R. Civ. P. 12(f) ...................................................................................................8

Fed. R. Civ. P. 15(a)(2) ..............................................................................................8

Fed. R. Civ. P. 26(b)(3) ..........................................................................................6-7

Mass. R. Civ. P. 26(b)(3) ...........................................................................................7

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2012) ...........8

Supreme Judicial Court, *Statement from the Supreme Judicial Court and Introduction*,
Massachusetts Guide to Evidence (2012 ed.) ...............................................................4

## PRELIMINARY STATEMENT

MassMutual's opposition (the "Opposition") to Defendants' cross-motion to compel discovery responses (the "Cross-Motion") provides a number of reasons as to why MassMutual should not be required to produce documents related to its "forensic review" and AVM.[1]  Not one of its arguments has merit.  *First*, MassMutual attempts to forestall scrutiny of its improper withholding of these documents by arguing that the Cross-Motion is premature. But there is no question that the Cross-Motion is ripe for resolution in light of MassMutual's refusal to produce the documents on purported privilege and work product grounds.  *Second*, MassMutual contends—for the first time—that it does not intend to depend at trial on what it now describes as an "irrelevant" "forensic review" and AVM that it relied upon in defending against Defendants' motion to dismiss.  This contention suggests that the Court's decision should be revisited as to those aspects of MassMutual's theories, but otherwise does not bar discovery of this highly relevant material, which MassMutual chose to put at issue in its Complaint and in opposing dismissal.  *Third*, regardless of whether MassMutual now seeks effectively to excise from the Complaint the dozens of paragraphs that rely on the "irrelevant" "forensic review" and AVM, Defendants are still entitled to test MassMutual's pre-amendment judicial admissions through discovery, including to the extent that they may bear on the credibility of any future representations or theories proffered by MassMutual on similar or other topics.

Thus, Defendants respectfully request that this Court grant the Cross-Motion and compel production of documents responsive to Defendants' Requests Nos. 52-54 and 72. Alternatively, if these materials are shielded from discovery, the Court should preclude

---

[1]    Where applicable, Defendants use here the same abbreviations or defined terms that they used in their Cross-Motion.

MassMutual from submitting any evidence in support of its claims—at any stage in this litigation—predicated on any form of "forensic review" or AVM analysis (and by extension, should strike any allegations from the Complaint that rely upon the "forensic review" and AVM).

## ARGUMENT

### A.    Defendants' Cross-Motion Is Ripe.

MassMutual's threshold defense—that the Cross-Motion is not ripe—is contradicted by every representation that MassMutual has made regarding its "forensic review" and AVM, from its Responses and Objections to Defendants' Requests (Redmond Decl. Ex. B (Pl.'s Resps. to Req. Nos. 52-54, 72)), to statements made to Defendants during the October 5 meet and confer, to the arguments that it now makes in its Opposition (*see, e.g.*, Opp'n, Sections II and III (both asserting that "MassMutual is [] entitled to withhold documents related to the pre-filing forensic analysis") at 4-11). MassMutual chose to place its "forensic review" and AVM front and center in this litigation and Defendants should not have to wait to obtain discovery of these core matters.

Indeed, MassMutual spends almost half of its Opposition explaining why it refuses to produce documents concerning its "forensic review" and AVM, thus demonstrating precisely why the Cross-Motion is timely.[2] This Court will not be "determin[ing] in a vacuum"

---

[2]    Although MassMutual contends that, under *Wallace* v. *Huntington National Bank*, this dispute cannot be adjudicated without a privilege log (Opp'n at 4), the court in *Wallace* merely concluded that it could not "effectively evaluate . . . the proper invocation of the privilege or [its] possible waiver" absent a privilege log where the sweeping document demand was for all documents concerning a particular person. Nos. 2:09-CV-104, 2:09-CV-469, 2010 WL 3603494, at *8 (S.D. Ohio Sept. 10, 2010). Here, by contrast, MassMutual has explicitly stated that it intends to invoke work product protection and attorney-client privilege for a discrete category of documents and has provided its purported rationale to do so in its Opposition; thus, there is no confusion about the nature or invocation of the alleged privilege or protection, or the reasons for its waiver.

that the requested documents are not privileged (Opp'n at 4) where the issue is whether

MassMutual—through its own conduct—has affirmatively injected these matters into the action,

thus waiving any purported privilege or immunity.  *See FDIC* v. *R.W. Beck, Inc.*, No. 01-CV-

11982-RGS, 2004 WL 1474579, at *1 (D. Mass. July 1, 2004) ("The privilege ends at the point

where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto,

are enmeshed in important evidence that will be unavailable to the defendant if the privilege

prevails.") (citing *Greater Newburyport Clamshell Alliance* v. *Pub. Serv. Co. of N.H.*, 838 F.2d

13, 20 (1st Cir. 1988)).  Having repeatedly represented that it is withholding documents relating

to or evidencing its "forensic analysis" and AVM, MassMutual cannot credibly argue that this

dispute is the type of "abstract disagreement" or hypothetical dispute that is not ripe for

adjudication.  *See Stern* v. *U.S. Dist. Court*, 214 F.3d 4, 10 (1st Cir. 2000).

> **B.     MassMutual Has Not Met Its Burden to Establish that Documents Related to Its "Forensic Review" and AVM Are Attorney-Client Privileged or Work Product Protected.**

Contrary to MassMutual's assertion (Opp'n at 5), Defendants do, in fact, dispute

that documents relating to its "forensic review" and AVM may be withheld under any claim of

privilege.  As explained in the Cross-Motion, MassMutual has not met its burden of establishing

that work product and attorney-client privilege protections apply to its computer model, or to

documents prepared by, or communications with, non-lawyer vendors or consultants.  *See FDIC*

v. *Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000).[3]

---

[3]     MassMutual's contention that *FDIC* v. *Ogden Corp.* does not "address[] the types of documents at issue here" (Opp'n at 7) is irrelevant because that case held that "the party resisting discovery"—here, MassMutual—bears the burden of showing that the privilege or other protection applies.  202 F.3d 454, 460 (1st Cir. 2000).  MassMutual also asserts that while, as set forth in *Ogden*, the attorney-client privilege in Massachusetts generally applies to "communications made to an attorney or counselor . . . with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations," *id.* at 461 (internal citations and quotation marks omitted), this rule also applies to "communications between a party's attorneys and any individuals or entities assisting the attorney" under "Section 502(b) of the

*(Footnote continued)*

-3-

More fundamentally, even if documents relating to the "forensic review" and AVM were somehow protected by the work product doctrine or attorney-client privilege—which they are not—MassMutual has not rebutted Defendants' showing that it waived any such protections by making its "forensic review" and AVM centerpieces of the Complaint as well as of the opposition to Defendants' motion to dismiss.  In fact, MassMutual effectively concedes that it would waive any privilege or protection attaching to the "forensic review" and AVM if it relied on those analyses at any future stage of this litigation.  (*See, e.g.*, Opp'n at 9 ("Because MassMutual does not intend to use its pre-filing forensic analysis to prove its claims, there is no 'at issue' waiver.").)  This tempered distinction makes no sense as a matter of law or logic, as it would allow a party to use privileged materials as a sword for as long as it strategically chooses, with the option to raise the privilege as a shield to block discovery of those materials when most convenient.  Here, MassMutual not only repeatedly referenced the "forensic review" in its Complaint, it also relied on the AVM's supposed precision and reliability, alleging that it is "industry-standard," and generated "[t]he true LTV ratios" and "the true values of the appraised properties."  (*See, e.g.*, Compl. ¶¶ 64, 72, 73.)

Although MassMutual attempts to minimize the aforementioned allegations and the underlying documents as merely "pre-filing" (Opp'n at 7), MassMutual's reliance on these materials did not end before it filed its Complaint.  To the contrary, MassMutual has invoked them throughout this litigation, including in successfully opposing a motion to dismiss.  In that

_____

*(Footnote continued)*
Massachusetts General Rules of Evidence."  (Opp'n at 6.)  MassMutual apparently relies on the Massachusetts Guide to Evidence, which states that it "is not to be interpreted as an adoption of a set of rules of evidence, nor a predictive guide to the development of the common law of evidence."  *See* Supreme Judicial Court, *Statement from the Supreme Judicial Court and Introduction*, Massachusetts Guide to Evidence (2012 ed.).  More fundamentally, MassMutual fails to identify any case suggesting that the Massachusetts attorney-client privilege so broadly covers communications with non-parties that it would protect the communications with the computerized AVM vendors or other non-parties at issue here.

-4-

opposition, MassMutual argued that "the Court must accept the truth of MassMutual's allegations, including the accuracy and reliability of its forensic analysis." (Pl's. Opp'n to Mot. to Dismiss at 25.) For example, in support of its underwriting guidelines claims, MassMutual claimed that "MassMutual also has set forth data showing that the underlying loans were issued on the basis of inflated appraisals and false loan applications" (*id.* at 17), and that it had alleged "the results of a forensic analysis of available loan data for each of the loan pools showing underwriting deficiencies" (*id.* at 18). Additionally, MassMutual claimed that it "has supported its allegations about misstated appraisal standards and LTV with a forensic analysis showing how materially different the appraised values and the LTV ratios would have been had proper procedures been followed." (*Id.* at 24.) And, in denying Defendants' motion to dismiss, this Court relied in part on the "results of the AVM" to conclude that the allegations sufficed to survive a motion to dismiss. *See Mass. Mut. Life Ins. Co.* v. *Residential Funding Co.*, 843 F. Supp. 2d 191, 204 (D. Mass. 2012). Thus, having relied throughout this case on its "forensic review" and AVM, MassMutual should not be permitted to shield them from discovery.

MassMutual's reliance on *MBIA Insurance Corp.* v. *Countrywide Home Loans, Inc.* and *Ambac Assurance Corp.* v. *DLJ Mortgage Capital, Inc.* to contest waiver is unavailing. (Opp'n at 8-9.) Both cases rely on New York law, as well as facts that are not present here. In *MBIA*, the court noted that its analysis was "fact-specific," that the withholding party was not using the documents as a "sword and a shield," and that the documents concerned the plaintiff's "due diligence upon its case prior to filing the instant complaint," unlike here, where the documents and analysis constitute core allegations. No. 602825/08, 2011 WL 7640152, at *6-7 (N.Y. Sup. Ct. Jan. 25, 2011). In *Ambac*, the appellate court reversed the trial court's order granting the motion to compel because, unlike here, the movants had not "challenge[d] the

existence of a privilege until their reply."  939 N.Y.S.2d 333, 335 (N.Y. App. Div. 2012).

Further, the court concluded that the references in the *Ambac* complaint to a "third party

consultant" were so tangential that they "could be stricken and [the complaint] would still stand."

*Id*.

    Finally, MassMutual claims that, to the extent documents concerning its "forensic

review" and AVM are deemed work product, there is no "substantial need" to produce such

materials because it has decided that it will not use them in this case.[4]  Defendants, however,

have a substantial need for these materials regardless of MassMutual's claimed disavowal

because they are part of the pleading record and may be used to challenge and impeach whatever

new theories MassMutual ultimately asserts.  Defendants cannot replicate MassMutual's AVM

without knowing the assumptions and data inputs for the AVM.  Nor can they "obtain the

substantial equivalent" of the forensic review without understanding the sources and analyses

used.[5]  And Defendants cannot obtain the requested documents, given their nature, through any

other means.  Rule 26 requires nothing more.  *See* Fed. R. Civ. P. 26(b)(3) (permitting discovery

of documents "prepared in anticipation of litigation" upon a showing that the party seeking

---

[4]  MassMutual's distinction between factual work product and opinion work product is a red herring.  (Opp'n at 10.)  MassMutual concedes that a non-party performed the "forensic review."  (*Id.* at 6.)  Accordingly, the documents that Defendants seek are unlikely to be "materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney."  *In re Grand Jury Subpoena*, 220 F.R.D. 130, 144 (D. Mass. 2004); *see also* Cross-Mot. at 7 (Defendants' requests seek "any reports or analyses (including drafts), all assumptions and data inputs for the AVM (including assumptions or data that were considered and rejected), the algorithms used by the AVM, the results of any iterations of the AVM that were not disclosed in the Complaint, any other AVM models tested, and any reports, discussions or e-mails about the 'forensic review' or AVM.").

[5]  MassMutual's contention that *UNR Industries, Inc.* v. *Continental Insurance Co.* is "inapposite because the court did not reach the waiver issue," is beside the point.  (Opp'n at 9 n.7.)  *UNR* held that the substantial need doctrine applied when "[n]o other source provides any 'substantial equivalent' . . . and the [withholding party] is the only existing entity which has an interest in developing such information."  No. 85 C 3532, 1992 WL 51708, at *5 (N.D. Ill. Mar. 6, 1992).  Thus, *UNR* concluded that where, as here, "statistical data developed by a litigant to support its damage claim could not be analyzed without the detailed information assertedly protected by work product privilege, *the privilege must yield to the need of the litigant seeking discovery*."  *Id.* (emphasis added).

discovery has substantial need for the materials in the preparation of the party's case and that the

party is unable without undue hardship to obtain the substantial equivalent of the materials by

other means); *see also Vicor Corp.* v. *Vigilant Ins. Co.*, 674 F.3d 1, 17-18 (1st Cir. 2012) (citing

Mass. R. Civ. P. 26(b)(3)).

### C.    MassMutual's Attempted Abandonment of Its "Forensic Review" and AVM Does Not Obviate Discovery.

Despite all of MassMutual's aforementioned tactical maneuverings to block

proper discovery of its "forensic review" and AVM by using its best efforts to disclaim them (*see*

Opp'n at 7 (contending that they now do "not constitute evidence and will not be used to prove

or dispute a claim"), notwithstanding their prominence in its Complaint and opposition to

Defendants' motion to dismiss, Defendants are still entitled to that discovery.

As a threshold matter, if MassMutual is truly abandoning its theory based on its

AVM, those allegations should be formally excised from its Complaint, and the sufficiency of

the Complaint's allegations should be reassessed by the Court.  Even taking MassMutual at its

word that it does not intend to use the "forensic review" or AVM to prove its claims, Defendants

should not be required to litigate a case based on a complaint littered with what MassMutual now

deems "irrelevant" and abandoned allegations.  MassMutual's "forensic review" and AVM

pervade its Complaint—at least thirty separate paragraphs of the Complaint are dedicated to the

analysis.[6]  Regardless of the Court's ruling on the Cross-Motion, at a minimum, MassMutual

should not be permitted to proceed with a complaint that is predicated on the "forensic review"

and AVM, but, instead, should be ordered to assert promptly whatever claims and theories it has

*not* rejected, allowing Defendants to move against an amended complaint stricken of the

---

[6]       Compl. ¶¶ 62-64, 67, 72, 78, 84, 90, 96, 102, 108, 114, 120, 126, 132, 138, 141, 143, 145-156.

"forensic review" and AVM allegations.[7]  *See* Fed. R. Civ. P. 12(f) (a court "may strike from a

pleading . . . any redundant, *immaterial*, impertinent, or scandalous matter") (emphasis added);

*see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382

(3d ed. 2012) ("'Immaterial' matter [under Rule 12(f)] is that which has no essential or important

relationship to the claim for relief or the defenses being pleaded . . . .").[8]

      Moreover, regardless of their purported abandonment, MassMutual's allegations

in the Complaint do not simply evaporate.  They constitute judicial admissions whose reliability

and veracity may be tested through discovery.  As this Court has stated, amending a complaint

"does not mean that the original complaint is a nullity and can be relevant for no purpose

whatever."  *Ultra-Temp Corp.* v. *Advanced Vacuum Sys., Inc.*, 194 F.R.D. 378, 382 (D. Mass.

2000) (citing *Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) ("The

amendment of a pleading does not make it any the less an admission of the party.")); *see also*

*InterGen N.V.* v. *Grina*, 344 F.3d 134, 144-45 (1st Cir. 2003) ("[S]tatements made in a

superseded complaint . . . may be party admissions, usable as such despite subsequent

amendment of the complaint.").

      Because "superseding a pleading by amendment affects the weight, not the

competency, of statements made in the original [pleading]," *Raleigh Flex Owner I, LLC* v.

*MarketSmart Interactive, Inc.*, No. 1:09 CV 699, 2011 WL 923356, at *7 (M.D.N.C. Mar. 7,

---

[7]     Rule 15(a)(2) accords this Court substantial discretion to order MassMutual to remove the "forensic review" and AVM-related allegations from the Complaint.  *See generally* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1471 (3d ed. 2012) (recognizing "permissive approach").  In the alternative, the Court may strike allegations from the Complaint "on its own."  *See* Fed. R. Civ. P. 12(f)(1).

[8]     *See also Beal* v. *Gen. Motors Corp.*, 354 F. Supp. 423, 429 (D. Del. 1973) (striking allegations from the complaint that "confuse and obscure the issues in this case" and were "legally irrelevant and immaterial as to . . . defendants"); *Davis* v. *Astrue*, No. C 06-6108 MHP, 2007 WL 2088580 (N.D. Cal. July 18, 2007) (granting motion to strike to avoid confusion).

2011), Defendants may still test the "forensic review" and AVM-related allegations—which remain admissible—through discovery and use MassMutual's admissions and tactical reliance on, but subsequent abandonment of, the AVM theory to impeach any future analyses or evidence offered by MassMutual, or analyses prepared by the same experts or consultants.  *Cf. Sunkyong Int'l, Inc.* v. *Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 n.3 (8th Cir. 1987) ("A pleading abandoned or superseded through amendment . . . may be introduced into evidence as the admission of a party.").  Thus, regardless of whether "MassMutual does not intend to rely on its pre-filing analysis to prove its claims" (Opp'n at 5), Defendants should be permitted to use that analysis to impeach any future analysis proffered by MassMutual.

MassMutual is also plainly wrong in implying that Defendants proposed in their Cross-Motion that a preclusion order as to the "forensic review" and AVM would be satisfactory relief.  Defendants' Cross-Motion requested that a preclusion order be issued only "[t]o the extent that" the Court decides that "MassMutual is allowed to shield documents related to its 'forensic review,' and the AVM on which it relies."  (Cross-Mot. at 10.)  Moreover, Defendants made plain that such a preclusion order would not cover just the "forensic review" and AVM, as MassMutual apparently now proposes, but also would preclude MassMutual's reliance on any modified version of a "forensic review" or AVM, because, otherwise, Defendants would be unfairly impeded from testing the accuracy and credibility of the modified version in light of the version pled in the Complaint.  (Cross-Mot. at 10 n.13.)  Accordingly, if the Court declines to order production of the requested documents, Defendants respectfully request that MassMutual be precluded from submitting into evidence at any stage of this case, any form of forensic review (by whatever name MassMutual might call it), or any form of AVM, covering the same or similar subject matters as those alleged in the Complaint.

## CONCLUSION

For the reasons stated above and in Defendants' opening submission, the Cross-

Motion should be granted.


Dated:   November 13, 2012
            Boston, Massachusetts

Respectfully submitted,


By:   ___/s/  Mark A. Berthiaume_____
            Mark A. Berthiaume (BBO No. 041715)
            GREENBERG TRAURIG, LLP
            One International Place
            Boston, Massachusetts 02110
            Telephone: (617) 310-6007
            Fax: (617) 310-6001
            berthiaumem@gtlaw.com

            Of Counsel:

            Richard H. Klapper (klapperr@sullcrom.com)
            (admitted *pro hac vice*)
            David M.J. Rein (reind@sullcrom.com)
            (admitted *pro hac vice*)
            Jordan T. Razza (razzaj@sullcrom.com)
            (admitted *pro hac vice*)
            Kamil E. Redmond (redmondka@sullcrom.com)
            (admitted *pro hac vice*)
            SULLIVAN & CROMWELL LLP
            125 Broad Street
            New York, New York  10004-2498
            Telephone:  (212) 558-4000
            Fax: (212) 558-3588

            *Attorneys for Defendant Goldman, Sachs & Co.*

By:    _/s/  Kathy B. Weinman_____
      Kathy B. Weinman (BBO No. 541993)
      Azure Abuirmeileh (BBO No. 670325)
      COLLORA LLP
      100 High Street, 20th Floor
      Boston, Massachusetts  02210
      Telephone:  (617) 371-1000
      Fax: (617) 371-1037
      kweinman@collorallp.com
      aabuirmeileh@collorallp.com

      Of Counsel:

      Thomas C. Rice (trice@stblaw.com)
      (admitted *pro hac vice*)
      David J. Woll (dwoll@stblaw.com)
      (admitted *pro hac vice*)
      Alan Turner (aturner@stblaw.com)
      (admitted *pro hac vice*)
      SIMPSON THACHER & BARTLETT LLP
      425 Lexington Avenue
      New York, New York 10017
      Telephone: (212) 455-2000
      Fax: (212) 455-2502

      *Attorneys for RBS Securities Inc. and Deutsche Bank Securities Inc.*

By:    _/s/  Jeffrey L. McCormick_____
      Jeffrey L. McCormick, Esq. (BBO No. 329740)
      ROBINSON DONOVAN, P.C.
      1500 Main Street, Suite 1600
      Springfield, Massachusetts 01115
      Telephone:  (413) 732-2301
      Fax:  (413) 785-4658
      jmccormick@robinsondonovan.com

Of Counsel:

Robert H. Baron (rbaron@cravath.com)
(admitted *pro hac vice*)
Karin A. DeMasi (kdemasi@cravath.com)
(admitted *pro hac vice*)
J. Wesley Earnhardt (wearnhardt@cravath.com)
(admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700

*Attorneys for J.P. Morgan Securities LLC*


By:    /s/  *Andrea J. Robinson*
       Jeffrey B. Rudman (BBO No. 433380)
       Andrea J. Robinson (BBO No. 556337)
       Christopher B. Zimmerman (BBO No. 653854)
       Adam J. Hornstine (BBO No. 666296)
       WILMER CUTLER PICKERING HALE
       AND DORR LLP
       60 State Street
       Boston, Massachusetts 02109
       Telephone:  (617) 526-6000
       Fax:  (617) 526-5000
       jeffrey.rudman@wilmerhale.com
       andrea.robinson@wilmerhale.com
       christopher.zimmerman@wilmerhale.com
       adam.hornstine@wilmerhale.com

       Katherine B. Dirks (BBO No. 673674)
       WILMER CUTLER PICKING HALE
       AND DORR LLP
       7 World Trade Center
       250 Greenwich Street
       New York, New York 10007
       Telephone: (212) 230-8800
       Fax: (212) 230-8888
       katherine.dirks@wilmerhale.com

       *Attorneys for Defendant Merrill Lynch, Pierce,*
       *Fenner & Smith Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NE) and paper copies will be sent to those indicated as nonregistered participants on November 13, 2012.


Dated:  November 13, 2012


/s/  *Mark A. Berthiaume*
Mark A. Berthiaume