**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**MOTION OF MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY**
**SEEKING LIMITED DISCOVERY FROM THE DEBTORS AND RELIEF FROM STAY**
**IMPOSED BY THE FHFA ORDER**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Philippe Z. Selendy
Jennifer J. Barrett
Minyao Wang
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Massachusetts Mutual*
*Life Insurance Company*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ........................................................................................................4

ARGUMENT .................................................................................................................................7

I. THE COURT SHOULD MODIFY THE STAY TO PERMIT MASSMUTUAL TO ACCESS THE LOAN TAPES FOR 12 SECURITIZATIONS ...................................7

    A. Six Factors Govern Whether Discovery of the Debtors Should Be Permitted ...................................................................................................................7

    B. Under the Six Factors, MassMutual Should Be Granted Relief from the Temporary Stay To Obtain the Loan Tapes ............................................................8

CONCLUSION ............................................................................................................................11

## TABLE OF AUTHORITIES

**Page**

### Cases

*Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC*,
  Case No. 11-civ-7010 (S.D.N.Y.) ............................................................................ 3

*Jaffee v. Redmond*,
  518 U.S. 1 (1996) .................................................................................................... 7

*In re Johns-Manville Corp.*,
  39 B.R. 659 (S.D.N.Y. 1984) ................................................................................... 9

*McHale v. Alvarez (In re The 1031 Tax Grp., LLC)*,
  397 B.R. 670 (Bankr. S.D.N.Y. 2008) ..................................................................... 7

### Statutes

Mass. Gen. Laws ch. 110A, § 419(a)(2) ............................................................................ 4

Massachusetts Mutual Life Insurance Company ("MassMutual") respectfully requests that this Court modify the limitation on discovery of the debtors in this action (collectively, the "Debtors") that was imposed by this Court's "*Memorandum Opinion and Order Denying the Motions of the Federal Housing Finance Agency and Underwriter Defendants to Compel Document Discovery from the Debtors*" [Dkt No. 1813] (the "FHFA Order"). By this Motion, MassMutual seeks narrowly tailored relief compelling the Debtors to produce 12 loan tapes and associated originator information in their possession related to securitizations of residential mortgage loans sponsored by the Debtors. Discovery of this basic loan-level information, which is unavailable from other sources, is necessary in connection with the action *Massachusetts Mutual Life Insurance Company v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.* (the "MassMutual Action"). The MassMutual Action is not subject to any bankruptcy stay and currently is pending before the Honorable Michael A. Ponsor in the United States District Court for the District of Massachusetts as Civil Action No. 3:11-cv-30285.[1]

**PRELIMINARY STATEMENT**

1.  The MassMutual Action arises from MassMutual's purchase of residential mortgage-backed securities between 2005 and 2007 from five underwriter defendants in 12 securitizations (the "Securitizations").[2] Each of the Securitizations was sponsored by the Debtors, but no Debtor or affiliate is named in the MassMutual Action. The deadline for the

---

[1] This Motion is supported by the Declaration of Jennifer J. Barrett (the "Barrett Decl.") filed concurrently herewith.

[2] Defendants in the MassMutual Action are Merrill Lynch, Pierce, Fenner & Smith Inc., Deutsche Bank Securities Inc., RBS Securities Inc., J.P. Morgan Securities LLC, and Goldman, Sachs & Co. (collectively, the "Underwriter Defendants"). The Securitizations at issue in the MassMutual Action, which correspond to the "loan tapes" that MassMutual requests the Debtors to produce, are listed in Exhibit A to the Barrett Declaration.

substantial completion of document discovery in the MassMutual Action is January 31, 2013. MassMutual requires that the Debtors produce 12 "loan tapes" and related information that contain critical loan-level data relating to the collateral underlying the Securitizations.

2. A loan tape, usually a single Excel spreadsheet, includes loan-by-loan financial specifications about the mortgage collateral underlying a securitization that are critical for determining whether a Securitization's offering materials accurately described the true characteristics of the underlying loans. In addition, loan tapes (or closely related documents that underlie them, which also are in the possession of the Debtors) are the most complete sources for the identity of the loan originators, key third parties that possess fundamental loan origination documents, including the underlying loan files[3] themselves.

3. MassMutual must obtain the final loan tapes for each of the 12 Securitizations at issue in the MassMutual Action to identify a statistically significant sample of loans on which to conduct loan-file discovery and an expert re-underwriting analysis. MassMutual also must obtain the final loan tapes to identify the originators of the underlying loans in order to serve such parties with document subpoenas and instructions regarding the preservation of documents.

4. MassMutual has attempted to obtain the final loan tapes from the Underwriter Defendants in the MassMutual Action, but those parties cannot represent that they possess the final or complete loans tapes. The few loan tapes that have been produced by the Underwriter Defendants appear to be preliminary and are missing key pieces of information, including originator identities and debt-to-income ratios for each borrower, that cannot be obtained from

---

[3] Loan files typically include the mortgage application (including all information provided by the borrower), any verification of employment or income, property appraisals, credit reports, and underwriter notes, and are generally hundreds of pages long.

2

any other available source.[4]  MassMutual has asked the Underwriter Defendants to search for additional loan tapes, and they have represented that they have none.  *See* Barrett Decl. Ex. F.

5. MassMutual requested that the Debtors voluntarily produce the loan tapes, but the Debtors refused.  *Id.* Ex. H.  MassMutual then requested that the Debtors' parent company obtain the loan tapes, but it simply referred MassMutual back to the Debtors.  *Id.* Ex. J.  Because the Debtors were the depositors and sponsors of the Securitizations, they are the entities that possess the complete loan tapes and identity of the originators of each of the loans at issue.

6. The Debtors' reorganization efforts will not be thwarted, or even hindered, by an Order from this Court granting MassMutual the limited relief it seeks from the third-party discovery stay.  The requested loan tape information can be provided by the Debtors to MassMutual at virtually no cost and minimal effort.  Indeed, the Debtors already have consented to produce 3 of the 12 loan tapes to FHFA.

7. By contrast, MassMutual's need for the final loan tapes in the MassMutual Action is great.  Simply put, if MassMutual cannot obtain the final loan tapes with the correct loan-level information (including originator information) from the Debtors before the upcoming January 31, 2013 discovery deadline, MassMutual may be severely prejudiced in effectively prosecuting its claims against non-debtor third parties.  Accordingly, for the reasons set forth herein, this Court should grant MassMutual relief from the stay of third-party discovery and order the

---

[4] In *Federal Housing Finance Agency v. Ally Financial Inc. f/k/a GMAC, LLC,* Case No. 11-civ-7010 (S.D.N.Y.) (the "FHFA Case"), plaintiff FHFA faced a nearly identical problem in obtaining loan tapes from underwriters.  In May 2012, the Honorable Denise Cote ordered the underwriter defendants in the FHFA Case to produce final loan tapes to FHFA by June 8, 2012.  The underwriter defendants produced some of the tapes, but like the loan tapes produced to MassMutual in the MassMutual Action, the majority of the loan tapes contained data deficiencies that made them insufficient for a sampling expert to develop a reliable sampling protocol.  The Debtors ultimately agreed to a stipulation entered in this Court to produce the loan tapes and originator information to FHFA.  [Dkt. No. 1444.]

Debtors to produce the 12 final loan tapes, and, to the extent not already contained on the tapes, the identity of the mortgage originators, for the Securitizations at issue in the MassMutual Action.

## FACTUAL BACKGROUND

8. On December 29, 2011, MassMutual filed its complaint in the MassMutual Action against the Underwriter Defendants, which sold MassMutual over $200 million of residential mortgage-backed securities (the "Certificates") in 12 Securitizations sponsored by the Debtors. No Debtor or affiliate of a Debtor is a defendant in the MassMutual Action, and the MassMutual Action has not been stayed by this Court.

9. The Complaint filed in the MassMutual Action asserts a single cause of action against the Underwriter Defendants under the Massachusetts Uniform Securities Act, Mass. Gen. Laws ch. 110A, § 419(a)(2), alleging that they offered and sold the Certificates to MassMutual using offering materials that contained untrue statements and/or omissions of material fact. The Complaint alleges, among other things, that the offering materials for the Certificates misrepresented that the underlying mortgage loans were issued according to sound underwriting practices and presented a false picture of the characteristics and riskiness of the mortgage loans.

10. MassMutual has attempted to obtain the loan tapes and originator information for the loans underlying the 12 Securitizations from the Underwriter Defendants. On July 23, 2012, shortly after the Massachusetts federal district court entered its Scheduling Order in the MassMutual Action, MassMutual served each Underwriter Defendant with its First Set of Requests for Production, which contained substantially similar requests but was tailored to each Underwriter Defendant's involvement in the Securitizations. *See* Barrett Decl. Ex. C. Each Underwriter Defendant was asked to produce all loan tapes in its possession, custody, or control

for each of the Securitizations. *Id.* (Request No. 47).  MassMutual also served its First Set of Joint Interrogatories to the Underwriter Defendants.  *See* Barrett Decl. Ex. B.  Joint Interrogatory No. 1 asked the Underwriter Defendants to identify all originators of the mortgage loans included in each of the Securitizations.  *Id.*

11. The Underwriter Defendants produced certain loan tapes on or about November 2, 2012 in response to MassMutual's First Set of Requests for Production.  The loan tapes that were produced, however, were missing key data fields, including FICO scores, borrower names, property addresses, and originator information.  In addition, there were significant discrepancies between the data in some of the loan tapes that were produced and the loan information in the prospectus supplements for the Certificates, indicating that the loan tapes were not final versions.  Counsel for MassMutual sent the Underwriter Defendants a letter dated November 20, 2012, explaining these deficiencies, and requesting that the Underwriter Defendants perform supplemental searches for loan tapes and produce any additional tapes by November 30, 2012.  *See* Barrett Decl. Ex. E.  By letter dated November 30, 2012, the Underwriter Defendants represented that they had identified no other loan tapes in their possession that would provide the missing information sought by MassMutual.  *See* Barrett Decl. Ex. F.

12. MassMutual also attempted unsuccessfully to obtain the missing loan-tape information from the Underwriter Defendants through interrogatories.  For example, in response to MassMutual's Joint Interrogatory No. 1, referenced above, no Underwriter Defendant identified a complete list of originators, and four out of the five Underwriter Defendants identified only the originators listed in publicly available prospectus supplements for the Securitizations, which omitted a significant number of the originators.  On October 1, 2012, MassMutual moved the Massachusetts federal district court to compel the Underwriter

Defendants to identify all the originators without delay.  *See* Barrett Decl. Ex. D.  To date, the federal district court has not ruled on this motion to compel, and the Underwriter Defendants contend they have no additional originator information, or other loan-level data, that reasonably can be located.

13. In light of the impending close of document discovery scheduled for January 31, 2013 in the MassMutual Action, MassMutual justifiably is attempting to obtain this information from other sources, namely the Debtors or their affiliates, to obtain the information needed for its expert loan re-underwriting process and to ensure that there is sufficient time to serve document subpoenas and preservation notices on the loan originators and other third parties.  To that end, on December 4, 2012, MassMutual made a formal request to the Debtors to produce the loan tapes.  *See* Barrett Decl. Ex. G.  Counsel for the Debtors responded that same day, taking the position that they were precluded from producing any discovery in light of the FHFA Order.  *See* Barrett Decl. Ex. H.

14. After the Debtors rejected MassMutual's request, on December 11, 2012, MassMutual made a request to the Debtors' parent company, Ally Financial, Inc. ("AFI"), that AFI obtain the loan tapes from Debtor Residential Capital, LLC pursuant to the companies' Shared Services Agreement, and then in turn produce the loan tapes to MassMutual.  *See* Barrett Decl. Ex. I.  Counsel for AFI responded by email on December 13, 2012, stating only that "AFI does not possess the loan tapes," and instructing MassMutual to direct any requests for loan tapes to counsel for Residential Capital, LLC.  *See* Barrett Decl. Ex. J.

15. The Scheduling Order in the MassMutual Action, entered on June 27, 2012 by the Honorable Michael Ponsor, requires that document discovery be completed by January 31, 2012, and non-expert depositions be completed by June 30, 2013.  *See* Barrett Decl. Ex. K.  The

absence of the final loan tapes for the 12 Securitizations at issue significantly hinders MassMutual's ability to move forward with fact and expert discovery to meet the discovery deadlines.

**ARGUMENT**

I. **THE COURT SHOULD MODIFY THE STAY TO PERMIT MASSMUTUAL TO ACCESS THE LOAN TAPES FOR 12 SECURITIZATIONS**

    A.    **Six Factors Govern Whether Discovery of the Debtors Should Be Permitted**

16.    In the FHFA Order, this Court held that section 362(a) of the Bankruptcy Code does not protect the Debtors from discovery in third-party actions. *See* FHFA Order at 11. The Court nevertheless extended the protection of section 362(a) to the Debtors pursuant to section 105 of the Bankruptcy Code, thus barring any discovery from the Debtors (as third parties) absent further order of the Court. *See id.* at 11 ("To be clear . . . the Court is extending the protection of the stay pursuant to section 105(a) to *anyone* seeking discovery from the Debtors absent further order of the Court.") (emphasis in original).

17.    In extending the protection of section 362(a), the Court emphasized that "[t]he touchstone for granting injunctive relief against third-party actions is whether the third-party action will 'threaten to thwart or frustrate the debtor's reorganization efforts.'" *See id.* at 18 (*citing McHale v. Alvarez* (*In re The 1031 Tax Grp., LLC*), 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008)). The Court further noted that because of "the primary assumption that there is a general duty to give what testimony one is capable of giving," the ultimate burden of persuasion rests with the debtor. *See* FHFA Order at 23 (*citing Jaffee v. Redmond,* 518 U.S. 1, 9 (1996)). Accordingly, where "a third party moves to lift the stay and permit discovery, the *debtor* must demonstrate why discovery should be limited or conditioned." FHFA Order at 23 (emphasis in original).

7

18.     The Court identified six factors for bankruptcy courts to consider in deciding whether to permit third-party discovery, and under what conditions to do so: (1) the scope of the requested discovery; (2) the context in which the request arises; (3) the need for the discovery; (4) the timing of the discovery; (5) the burden on the debtors from the requested discovery; and (6) the expense of the discovery and who should bear the cost. *Id.* at 15. The Court explained that, of the six factors outlined above, the party seeking discovery bears the burden to establish scope (factor 1), context (factor 2), and need (factor 3). *Id.* Although both parties must come forward with evidence with respect to timing (factor 4), it is the *Debtors* that must demonstrate the burden and expense of the discovery being sought (factors 5 and 6). *Id.* The Court also held that "[t]he greater the limitations or conditions the debtor seeks to impose on discovery, and the greater the interference that will result in the nonbankruptcy matter if limitations and conditions are imposed, the stronger the debtor's evidence and argument will need to be." *Id.*

19.     For the reasons explained below, the factors identified by the Court in the FHFA Order overwhelmingly weigh in favor of granting relief from the temporary stay to permit MassMutual to obtain access to the requested loan tapes.

   **B.     Under the Six Factors, MassMutual Should Be Granted Relief from the Temporary Stay To Obtain the Loan Tapes**

20.     The discovery sought from the Debtors in this Motion is extremely limited. The loan tapes MassMutual is seeking are simply Excel spreadsheets containing approximately 50-60 data fields regarding characteristics for each loan underlying the Securitizations. Although the complete loan tapes often identify the originator of each loan, to the extent they do not, the Debtors, as sponsor and depositor of the Securitizations, have ready access to this originator identification information.

21. The Debtors can provide the loan tape data to MassMutual at almost no cost and with minimal effort. Obtaining and delivering the loan tapes and originator identification that MassMutual seeks will not require substantial internal resources of the Debtors or extensive collaboration with outside vendors, nor would the task require involvement of any key decision-makers involved in strategic planning, formulation, or negotiation of the Debtors' reorganization. *See In re Johns-Manville Corp.*, 39 B.R. 659, 661 (S.D.N.Y. 1984) (ordering production of third-party discovery requests because the requests "involve[d] primarily, or exclusively, local [ ] documents and personnel" from the debtor's manufacturing plant, and the debtor had "made no showing that this discovery would involve anyone significantly responsible for high level corporate management or reorganization negotiations").

22. The scope of discovery that MassMutual seeks is significantly less burdensome than what the Debtors agreed to produce in the FHFA Case. FHFA sought loan tapes, including originator information, for 21 securitizations, whereas MassMutual is seeking loan tapes for only 12 securitizations. In fact, loan tapes for at least 3 of the 12 securitizations are loan tapes that the Debtors agreed to produce to FHFA pursuant to the stipulation filed in this Court on September 14, 2012. [Dkt. No. 1444.][5] Requiring the Debtors to produce 12 spreadsheets with associated originator information would not in any way interfere with the Debtors' rehabilitation in this bankruptcy. *See* FHFA Order at 26 (noting that the stay should remain in place if production of discovery sought would be incompatible with demands arising from the Debtors' bankruptcy action).

---

[5] Except for referring to the FHFA Order, the Debtors offered no explanation why they would refuse to provide the loan tapes, including the 3 loan tapes they had agreed to provide to FHFA.

23. In contrast to the limited burden this discovery would place on the Debtors, MassMutual will experience extensive harm and prejudice if it is precluded from promptly obtaining the loan tapes and originator information that it requires to prosecute the MassMutual Action. As Judge Cote stated in the FHFA Case, production of final loan tapes "is the first cut that permits the parties to evaluate the claims and to organize their other discovery requests and figure out whether or not third-party discovery needs to take place and who would be involved in that." *Id.* (quoting Tr. of July 17, 2012 Case Conference in the FHFA Case at 9:3-10).

24. Further, the final loan tapes are necessary for MassMutual to identify a statistically significant sample of loans to conduct loan-file discovery and an expert re-underwriting analysis. Like FHFA, MassMutual intends to establish the Underwriter Defendants' misrepresentations based in part on the conclusions drawn from an expert re-underwriting of a statistically valid random sample of loan files for each Securitization. Re-underwriting involves review and analysis of the loan file for each mortgage loan and an evaluation of whether the underwriting guidelines in effect at the time were followed. Because there are 37,000 mortgage loans underlying the Securitizations, it is cost- and time-prohibitive for the parties to undertake to re-underwrite the entire pool of loans. Instead, MassMutual intends to use a statistically valid random sample of loans for each Securitization as representative of the population of mortgage loans in each Securitization, and to draw conclusions about the population from the sample. MassMutual must obtain the final loan tapes from the Debtors to select its samples, identify the loan files needed in discovery, and obtain and re-underwrite those loan files. Until MassMutual obtains the final loan tapes from the Debtors, it cannot proceed with fact and expert discovery in the MassMutual Action.

25. Accordingly, relief from the automatic is justified here because the minimal harm to the Debtors from providing the subject discovery is outweighed by the extensive prejudice that would befall MassMutual if it does not gain access to the requested loan tapes.

## CONCLUSION

26. For the foregoing reasons, the Court should permit MassMutual access to the loan tapes for the Securitizations identified in Exhibit A and grant any such other and further relief to MassMutual as deemed just and proper.

DATED: December 20, 2012

        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:   /s/ Minyao Wang
     Philippe Z. Selendy
     Jennifer J. Barrett
     Minyao Wang
     51 Madison Avenue, 22nd Floor
     New York, NY 10010
     Telephone: (212) 849-7000
     Fax (212) 849-7100
     *Attorneys for Massachusetts Mutual Life Insurance Company*